*423 Opinion
AARON, J.
I.
INTRODUCTION
In 1997, the trial court sentenced Jason A. Berg to life without the possibility of parole (TWOP) for committing a first degree murder with special circumstances when he was 17 years old. (See Pen. Code,[1] § 190.5, subd. (b) [providing that the penalty for a first degree murder with special circumstances for a person “16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life”].)
Berg filed a petition for habeas corpus in December 2014, in which he requested that the court vacate his sentence and order a new sentencing hearing on the ground that the sentencing court’s imposition of an TWOP sentence was unconstitutional under Miller v. Alabama (2012) 567 U.S. _ [183 T.Ed.2d 407, 132 S.Ct. 2455] (Miller). In Miller, the United States Supreme Court held that “mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments’ ” (id. at p. _ [132 S.Ct. at p. 2460]) and stated that the “appropriate occasions” for sentencing juveniles to LWOP are “uncommon.” (Id. at p. _ [132 S.Ct. at p. 2469].)
The habeas corpus court ruled that the sentencing court’s statement of reasons for imposing an LWOP sentence was “inconsistent with the evolving Eighth Amendment jurisprudence and the requirements of Miller, supra.” The court granted the petition, vacated Berg’s sentence, and ordered that the matter be set for resentencing.
On appeal, in their opening brief, the People contend that the habeas corpus court erred in granting Berg’s petition because Miller does not apply retroactively. However, while this appeal was pending, the United States Supreme Court held that Miller announced a substantive rule of constitutional law that must be given retroactive effect. (Montgomery v. Louisiana (2016) 577 U.S. _ [193 L.Ed.2d 599, 136 S.Ct. 718] (Montgomery).) Accordingly, we reject the People’s argument that Miller does not apply retroactively.
*424 The People also claim that, even assuming Miller applies retroactively, the sentencing court complied with Miller by considering “youth-oriented factors” before imposing an LWOP sentence. In People v. Gutierrez (2014) 58 Cal.4th 1354 [171 Cal.Rptr.3d 421, 324 P.3d 245] (Gutierrez), the California Supreme Court stated, “We understand Miller to require a sentencing court to admit and consider relevant evidence,” pertaining to five specific categories of evidence relevant to the determination of “whether a particular defendant is a ‘ “rare juvenile offender whose crime reflects irreparable corruption.” ’ ” (Id. at p. 1388.) The Gutierrez court also concluded that an LWOP sentence may be imposed on a juvenile homicide offender only “when the sentencing court’s discretion is properly exercised in accordance with Miller.” (Id. at p. 1379.) While the court carefully considered numerous factors in sentencing Berg, including Berg’s youth, the court did not exercise its discretion in accordance with the principles espoused in Miller and Gutierrez, which were both decided long after Berg’s sentencing. We therefore reject the People’s contention that the trial court complied with Miller and Gutierrez.
Finally, in a supplemental brief, relying on a recent decision of another panel of this court in In re Kirchner (2016) 244 Cal.App.4th 1398, 1416 [199 Cal.Rptr.3d 416] (Kirchner), the People contend that Berg’s petition should be denied because section 1170, subdivision (d)(2) provides an adequate statutory remedy for Miller error. In Montgomery, the United States Supreme Court concluded that “[a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them,” and cited a Wyoming statute providing that juvenile homicide offenders are eligible for parole in that state after 25 years of imprisonment. (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 736].)
Unlike the Wyoming statute cited in Montgomery, section 1170, subdivision (d)(2) does not provide that California juvenile homicide offenders may be considered for parole after some specified period of time. Instead, the statute sets forth a process pursuant to which a select group of defendants sentenced to LWOP for crimes committed as juveniles may file petitions for recall and resentencing, which, if granted, may lead to the imposition of a new sentence containing a period of parole eligibility. (Ibid.) The statute expressly disqualifies certain defendants from obtaining relief pursuant to the statute (id., subd. (d)(2)(A)(ii)), requires a defendant to file a petition “describing his or her remorse and work towards rehabilitation” (id., subd. (d)(2)(B)), requires the petition to affirm that one of four qualifying factors is true (id., subd. (d)(2)(B)(i)—(iv)), and sets forth a nonexclusive list of eight factors for a trial court to consider in determining whether to grant the petition (id., subd. (d)(2)(F)(i)—(viii)). In short, while section 1170, subdivision (d)(2) provides a statutory procedure by which some defendants serving LWOP sentences for crimes committed as juveniles may obtain resentencing, we disagree with the Kirchner court’s conclusion that the statute provides such *425 defendants with “all the rights set forth in Miller and Montgomery.” (Kirchner, supra, 244 Cal.App.4th at p. 1416.) For reasons that we explain in greater detail in part III.C., post, we conclude that section 1170, subdivision (d)(2) does not provide an adequate statutory remedy for Miller error.
Accordingly, we affirm the trial court’s order granting Berg’s petition and directing that the matter be set for resentencing.
II.
FACTUAL AND PROCEDURAL BACKGROUND
A. The commitment offenses[2]
At the age of 17, Berg murdered victim Kettie Hancock during a burglary/robbery of a store at which Hancock was the manager. Berg’s girlfriend, who worked at the store, let Berg and an accomplice into the store. Berg stabbed Hancock more than 21 times.
Approximately two weeks prior to the Hancock murder, Berg committed a robbery of a gas station. During the robbery, Berg stabbed the victim, Richard Couch, at least twice, causing Couch to suffer a deep puncture wound to his left arm.
B. The underlying criminal case
In October 1996, the People charged Berg with murder (§ 187) (count 1), and alleged the special circumstance that Berg committed the murder in the course of a robbery (§ 190.2, subd. (a)(17)), and during the commission of a burglary (§ 190.2, subd. (a)(17)). The People also alleged that Berg personally used a knife during the murder (§ 12022, subd. (b)(1)). In addition, the People charged Berg with conspiracy to commit robbery and burglary (§ 182, subd. (a)(1)) (count 2), robbery (§ 211) (count 3), and burglary (§ 459) (count 4) and alleged a knife use allegation with respect to each count (§ 12022, subd. (b)(1)). Counts 1 through 4 were all related to the Hancock murder.
With respect to the incident involving Couch, the People charged Berg with attempted murder (§§ 664, 187, subd. (a)) (count 5), assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (a)) (count 6), and robbery (§ 211) (count 7). The People also alleged numerous weapon and injury enhancements with respect to these counts.
*426 In May 1997, Berg pled guilty to all charges and allegations.
As discussed in greater detail in part III.B., post, the trial court sentenced Berg to LWOP on the murder conviction. Pursuant to section 654, the court stayed execution of the sentence on the knife enhancement (§ 12022, subd. (b)(1)) on count 1. The court also stayed execution of the sentences on both the substantive offenses and enhancements on counts 2 through 4 pursuant to section 654. With respect to the attempted murder in count 5 and related enhancements, the court imposed an aggregate term of 11 years to be served concurrently with the LWOP sentence. The court stayed execution of the sentence on count 6 pursuant to section 654 and imposed a seven-year sentence on count 7, to be served concurrently with the LWOP sentence.
C. Berg’s petition for habeas corpus
In December 2014, Berg filed a petition for habeas corpus and a supporting brief in which he contended that the sentencing court’s imposition of an LWOP sentence for a crime that he committed as a juvenile constituted a violation of the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution under Miller and Gutierrez-[3] Berg supported his petition with relevant portions of the record in the underlying criminal case.
After the People filed an informal response and Berg filed a reply, the trial court issued an order to show cause as to why Berg’s sentence should not be vacated and a resentencing hearing held.
The People filed a return and a supporting brief in which they argued that the sentencing court had given “full consideration to the relevant youth-related factors applicable to [Berg],” and contended that “further guidance by Miller and Gutierrez decisions would not have altered the court’s sentencing choice.” (Boldface & capitalization omitted.) In the alternative, the People argued that Miller should not be applied retroactively to Berg’s case, which was final at the time Miller was decided.
After Berg filed a denial and the habeas corpus court held a hearing on the petition, the court issued an order granting the petition. In its order granting the petition, the habeas corpus court concluded that “current Eighth Amendment jurisprudence regarding the imposition of life sentences on juvenile offenders must be applied retroactively to persons serving actual or functional LWOP sentences.” The habeas corpus court further concluded that *427 the sentencing court’s statement of reasons for imposing an LWOP sentence on Berg did not comport with the requirements of Miller. The court ordered “that a writ of habeas corpus be issued; that [Berg’s] sentence of LWOP be vacated; and that the matter be set for re-sentencing in the Superior Court.”
The People appeal the trial court’s order granting Berg’s petition for habeas corpus.
III.
DISCUSSION
A. The habeas corpus court did not err in concluding that Miller applies retroactively
As noted in part L, ante, in their opening brief, the People contend that the trial court erred in granting Berg’s petition because Miller does not apply retroactively to Berg’s case. However, the People concede in their supplemental brief that “the United States Supreme Court in Montgomery held that Miller is retroactive
We agree with the People’s concession. In Montgomery, the United States Supreme Court held that Miller’s “holding is retroactive to juvenile offenders whose convictions and sentences were final when Miller was decided.” (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at pp. 725, 732-736] [concluding that Miller established a substantive rule of law that must be given retroactive effect under the federal Constitution].)
Accordingly, the habeas corpus court did not err in concluding that Miller applies retroactively.
B. The habeas corpus court properly concluded that, in sentencing Berg, the trial court did not exercise its discretion in accordance with the juvenile LWOP sentencing requirements later established in Miller
The People contend that the sentencing court “[c]omplied with Miller and Gutierrez” because the sentencing court took “into account Miller-type youth-oriented factors, and decided that LWOP was the appropriate sentence.” The People’s contention raises a question of law. We review questions of law de novo. (See, e.g., People v. Butler (2003) 31 Cal.4th 1119, 1127 [37 Cal.Rptr.2d 729] (Butler).)
1. Governing law
In Montgomery, the United States Supreme Court held that before a defendant may be sentenced to LWOP for a crime committed as a juvenile, *428 the sentencing court must hold a hearing at which the court considers the principles espoused in Miller concerning youth: “A hearing where ‘youth and its attendant characteristics’ are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. [Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2460].] The hearing does not replace but rather gives effect to Miller s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.” (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 735].)
In Gutierrez, the California Supreme Court applied Miller in disapproving People v. Guinn (1994) 28 Cal.App.4th 1130 [33 Cal.Rptr.2d 791] (Guinn). In Guinn, the Court of Appeal held that section 190.5, subdivision (b) creates a presumption in favor of life without parole for those sentenced under its provisions. The Gutierrez court summarized its holding and disposition as follows:
“[W]e hold that section 190.5[, subdivision (b)], properly construed, confers discretion on a trial court to sentence a 16- or 17-year-old juvenile convicted of special circumstance murder to life without parole or to 25 years to life, with no presumption in favor of life without parole. We further hold that Miller requires a trial court, in exercising its sentencing discretion, to consider the ‘distinctive attributes of youth’ and how those attributes ‘diminish the penological justifications for imposing the harshest sentences on juvenile offenders’ before imposing life without parole on a juvenile offender. (Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2465].) Because the sentencing regime created by section 190.5 [, subdivision (b)] authorizes and indeed requires consideration of the distinctive attributes of youth highlighted in Miller, we find no constitutional infirmity with section 190.5 [, subdivision (b)] once it is understood not to impose a presumption in favor of life without parole.
‘“Because the two defendants here were sentenced before Miller in accordance with the interpretation of section 190.5 [, subdivision (b)] prevailing at the time (see Guinn, supra, 28 Cal.App.4th at p. 1142), we remand for resentencing in light of the principles set forth in Miller and this opinion.” (Gutierrez, supra, 58 Cal.4th at pp. 1360-1361.)
The Gutierrez court further concluded that Miller requires that a court deciding whether to impose an LWOP sentence on a defendant for a crime committed as a juvenile consider the following five types of evidence pertaining to youth: (1) “offender’s ‘chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences’ ” (Gutierrez, supra, 58 Cal.4th at p. 1388); (2) “any *429 evidence or other information in the record regarding ‘the family and home environment that surrounds [the defendant]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional’ ” (id. at pp. 1388-1389); (3) “any evidence or other information in the record regarding ‘the circumstances of the homicide offense, including the extent of [the defendant’s] participation in the conduct and the way familial and peer pressures may have affected him’ ” (id. at p. 1389); (4) “any evidence or other information in the record as to whether the offender ‘might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys’ ” (ibid.); and (5) “any evidence or other information in the record bearing on ‘the possibility of rehabilitation’ ” (ibid.).
In People v. Chavez (2014) 228 Cal.App.4th 18 [175 Cal.Rptr.3d 334] (Chavez), this court applied Miller and Gutierrez and stated that the five aforementioned types of evidence “when considered together in a reasoned manner . . . [are a] useful and necessary means by which a sentencing court must determine whether transient immaturity requires some degree of leniency or irreparable corruption must be punished as severely as possible.” (Id. at p. 33.) Because there was nothing in the record in Chavez that indicated “that the trial court itself directly considered this ultimate question,” this court remanded the matter for resentencing. (Id. at p. 34, italics omitted.)
2. Factual and procedural background
a. The sentencing court’s statement of reasons for imposing an LWOP sentence
At sentencing, the trial court stated that, pursuant to Guinn, Berg’s sentence was “presumptively] life without possibility of parole.” The court added, “I want to make it clear, however, that in my view, if I had to weigh between the two [sentence alternatives under section 190.5, subdivision (b) (i.e., LWOP or a sentence of 25 years to life)] on an equal basis, the sentence in this case would be the same.”
The court also noted that it was required to consider both aggravating and mitigating factors in determining an appropriate sentence. In the course of its discussion of such factors, the court made reference to several types of evidence related to Berg’s youth. For example, the court referred to Berg’s childhood as follows: “The most important and significant item in mitigation relates to the defendant’s childhood. And here I recognize—I was bowled over by the hellish childhood that this individual had. I have read thousands of probation reports. I have handled juvenile dependency cases. I have seen *430 many, many sad situations, but this is probably the worst that I have ever seen, short of torture of a child. That was mental torture.”
However, the court reasoned that, notwithstanding Berg’s horrendous childhood, he had made a choice to commit the murder, stating: “The problem with all of this is that the defendant, at some point, began to make his own decisions. He was old enough at the age of 17 years eight months to decide [sic] he had examples of the other way.” The court continued, “He had ceased being the child. The child was already damaged and gone. The adult made the decision to kill [the victim].”
In discussing whether to follow a psychologist’s recommendation to impose a sentence other than LWOP, the court stated: “If I look at this, the protection of society must be uppermost, and I cannot think that we have the means yet, at the state where we are today in history, particularly with the state of our prisons, to say that he could get enough therapy, and enough rehabilitation, to be a safe bet, even when he’s an old man. It seems to me that too much damage has been done to take that risk. [¶] I don’t disagree that that would be wonderful, but I do disagree that we have the means to accomplish it.”
The court further stated, “I find age as a slightly mitigating factor in this case. [Berg] was young, but old enough to be sent to war in four months, and old enough to make the choice.”
After a lengthy discussion of aggravating and mitigating factors, the court stated, “So, I must sentence [Berg] to prison without the possibility of parole. The aggr[a]vants outweigh the mitigants, so I must do that.”
b. The habeas corpus court’s review of the sentencing court’s statement of reasons
In its order granting Berg’s petition, the habeas corpus court rejected the People’s contention that the sentencing court had adequately considered the factors associated with youth discussed in Miller. The habeas corpus court reasoned: “The court finds and concludes that [the sentencing judge’s] decision, though careful and thoughtful in the extreme, did not give consideration to these factors—then unknown and, in this court’s view, largely unforeseeable—when she pronounced judgment. Instead the thrust of the court’s analysis was to consider aggravants and mitigants under [former] rules 421 and 423 of the California Rules of Court. [Citation.] For this reason alone, this court concludes the petition must be granted.”
*431 3. Application
We acknowledge that the sentencing court’s statements demonstrate that the court did consider Berg’s youth, to some degree, prior to imposing an LWOP sentence. However, “Miller ... did more than require a sentencer to consider a juvenile offender’s youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of ‘the distinctive attributes of youth.’ ” (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 734].) Therefore, “[e]ven if a court considers a child’s age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ‘ “unfortunate yet transient immaturity.” ’ ” (Ibid.) Thus, before an LWOP sentence may be imposed on a juvenile, a sentencing court must hold a hearing at which it considers whether the defendant is “ ‘ “the rare juvenile offender whose crime reflects irreparable corruption.” ’ ” (Ibid.)
The record in this case does not reflect that the sentencing court ever considered “the ultimate question posed by the courts in both Miller and Gutierrez . . . : Did th[is] crime[] reflect transient immaturity or irreparable corruption?” (Chavez, supra, 228 Cal.App.4th at p. 33.) Rather than considering Berg’s youth in determining whether he was the “ ‘ “rare juvenile offender whose crime reflects irreparable corruption” ’ ” (Gutierrez, supra, 58 Cal.4th at p. 1388), the sentencing court considered Berg’s youth in the context of determining whether, as the sentencing court stated, the “aggr[a]vants outweigh the mitigants.” Thus, it is clear that in imposing an LWOP sentence on Berg, the trial court did not exercise its discretion “in accordance with Miller,” as is required. (Id. at p. 1379.)[4]
In addition, given that Berg was sentenced prior to the decisions in Miller and Gutierrez, the record does not reflect that the sentencing court considered all relevant evidence related to whether the court could lawfully impose an LWOP sentence on Berg. (See Gutierrez, supra, 58 Cal.4th at pp. 1389-1390 [outlining five categories of youth-related evidence relevant to the determination of whether to impose an LWOP sentence on a defendant for a crime committed as a juvenile].) A new sentencing hearing will afford the opportunity for the parties to present, and the trial court to consider, such evidence.
*432 Accordingly, we conclude that the habeas corpus court properly determined that, in sentencing Berg, the trial court did not exercise its discretion in accordance with the juvenile LWOP sentencing requirements established in Miller.
C. Section 1170, subdivision (d)(2) does not provide an adequate remedy for Miller error
In their supplemental brief, the People contend that “Berg’s habeas petition should be denied because he has a statutory remedy [for Miller error] under section 1170, subdivision (d)(2).”[5] (Citing Kirchner, supra, 244 Cal.App.4th 1398.) The People’s contention raises a pure question of law. We review questions of law de novo. (See, e.g., Butler, supra, 31 Cal.4th at p. 1127.)
1. The law governing collateral relief for Miller error
As discussed in part III.B., ante, under Miller, Gutierrez and Montgomery, before imposing an LWOP sentence for a crime committed while the defendant was a juvenile, a “trial court must consider all relevant evidence bearing on the ‘distinctive attributes of youth’ discussed in Miller and how those attributes ‘diminish the penological justifications for imposing the harshest sentences on juvenile offenders.’ ” (Gutierrez, 58 Cal.4th at p. 1390, quoting Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2465]; accord, Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 735].) A trial court’s failure to consider such factors constitutes error.
In Montgomery, the United States Supreme Court held “that Miller announced a substantive rule of constitutional law,” that must be applied retroactively. (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 736].) The Montgomery court reversed the Louisiana Supreme Court’s denial of an inmate’s application for a supervisory writ seeking collateral review of his LWOP sentence. (Id. at p. _ [136 S.Ct. at pp. 727, 737.) The Montgomery court also clarified that states are not required to “relitigate sentences” (id. at p. _ [136 S.Ct. at p. 736]) in order to remedy Miller error, but can simply permit juvenile homicide offenders to be considered for parole:
“Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller *433 violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g., Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
“Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of Miller s central intuition—that children who commit even heinous crimes are capable of change.” (Ibid.)
2. Section 1170, subdivision (d)(2)
Section 1170, subdivision (d)(2) outlines a process by which certain defendants serving an LWOP sentence for a crime committed as a juvenile may file a petition for recall and resentencing.
Section 1170, subdivision (d)(2)(A) describes the types of defendants who qualify to file such a petition. Section 1170, subdivision (d)(2)(A)(i) requires that the defendant have served “at least 15 years of [the LWOP] sentence,” prior to filing a petition. Section 1170, subdivision (d)(2)(A)(ii) provides that the statute “shall not apply” to defendants who tortured their victim or to defendants whose victim was a public safety official.[6]
Section 1170, subdivision (d)(2)(B) outlines the required contents of a petition for recall and resentencing, including mandating that the defendant describe “his or her remorse and work towards rehabilitation,” and state that one of four qualifying factors is true. Section 1170, subdivision (d)(2)(B) provides:
*434 “The defendant shall file the original petition with the sentencing court. A copy of the petition shall be served on the agency that prosecuted the case. The petition shall include the defendant’s statement that he or she was under 18 years of age at the time of the crime and was sentenced to life in prison without the possibility of parole, the defendant’s statement describing his or her remorse and work towards rehabilitation, and the defendant’s statement that one of the following is true:
“(i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.
“(ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.
“(iii) The defendant committed the offense with at least one adult codefendant.
“(iv) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse.”
Section 1170, subdivision (d)(2)(C) provides that “[i]f any of the information required in subparagraph (B) is missing from the petition,” the trial court “shall return the petition to the defendant and advise the defendant that the matter cannot be considered without the missing information.”
Section 1170, subdivision (d)(2)(D) authorizes the People to file a reply to the petition.
Section 1170, subdivision (d)(2)(E) specifies the circumstances under which a court shall hold a hearing on the petition: “If the court finds by a preponderance of the evidence that the statements in the petition are true, the court shall hold a hearing to consider whether to recall the sentence and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. Victims, or victim family members if the victim is deceased, shall retain the rights to participate in the hearing.”
*435 Section 1170, subdivision (d)(2)(F) outlines several factors that a court may consider in determining whether to recall and resentence a defendant:
“The factors that the court may consider when determining whether to recall and resentence include, but are not limited to, the following:
“(i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.
“(ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.
“(iii) The defendant committed the offense with at least one adult codefendant.
“(iv) Prior to the offense for which the sentence is being considered for recall, the defendant had insufficient adult support or supervision and had suffered from psychological or physical trauma, or significant stress.
“(v) The defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors that did not constitute a defense, but influenced the defendant’s involvement in the offense.
“(vi) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse.
“(vii) The defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime.
“(viii) The defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor.”[7]
*436 Section 1170, subdivision (d)(2)(G) describes the court’s discretion to recall the sentence and resentence the defendant: “The court shall have the discretion to recall the sentence and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. The discretion of the court shall be exercised in consideration of the criteria in subparagraph (B). Victims, or victim family members if the victim is deceased, shall be notified of the resentencing hearing and shall retain their rights to participate in the hearing.”
Section 1170, subdivision (d)(2)(H) defines the circumstances under which a defendant may file a subsequent petition for recall of sentence after the denial of a petition: “If the sentence is not recalled, the defendant may submit another petition for recall and resentencing to the sentencing court when the defendant has been committed to the custody of the department for at least 20 years. If recall and resentencing is not granted under that petition, the defendant may file another petition after having served 24 years. The final petition may be submitted, and the response to that petition shall be determined, during the 25th year of the defendant’s sentence.”
3. Section 1170, subdivision (d)(2) does not provide an adequate remedy for a defendant seeking collateral relief for Miller error
“[H]abeas corpus is appropriate only when there are no other available and adequate remedies; it may not be used to avoid otherwise available and adequate remedies.” (Michelle K. v. Superior Court (2013) 221 Cal.App.4th 409, 433 [164 Cal.Rptr.3d 232].) Thus, we must determine whether section 1170, subdivision (d)(2) provides an adequate remedy for a defendant, such as Berg, imprisoned under a sentence imposed in violation of Miller and its progeny. For the reasons discussed below, we conclude that section 1170, subdivision (d)(2) does not provide an adequate remedy.
To begin with, to conclude that section 1170, subdivision (d)(2) provides an adequate remedy for those serving sentences imposed in violation of Miller would be inconsistent with the United States Supreme Court’s decision in Montgomery. The Montgomery court indicated that states could remedy a Miller violation by “[e]xtending parole eligibility” to offenders serving LWOP sentences for crimes committed as juveniles. (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 736].) At no point in the Montgomery court’s opinion did the court suggest that a state could remedy Miller error by permitting a defendant to utilize a statutory procedure that might lead to parole eligibility. The actual remedy authorized in Montgomery, extending parole eligibility, provides an adequate remedy for Miller error because it is the defendant’s ineligibility for parole that is the harm suffered by juvenile *437 defendants sentenced to LWOP. In contrast, providing a defendant with the opportunity to file a petition under section 1170, subdivision (d)(2) that may or may not lead to the imposition of a new sentence containing a period of parole clearly does not guarantee such relief.
Given the stringent requirements of section 1170, subdivision (d)(2), if the statute were deemed to provide an adequate remedy for defendants serving a sentence imposed in violation of Miller, it is all but certain that many defendants would be required to continue to serve LWOP sentences without any sentencing court ever having considered whether such defendants were the “ ‘ “rare juvenile offender [s] whose crime reflects irreparable corruption,” ’ ” as is required. (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 724],)[8] Such a result would be inconsistent with Montgomery’s central tenet, namely, that a retroactive application of Miller is required in light of the “grave risk” that many inmates serving LWOP sentences from crimes committed as juveniles are “being held in violation of the Constitution.” (Montgomery, at p._[136 S.Ct. at p. 736].)
In addition to being inconsistent with Montgomery, concluding that section 1170, subdivision (d)(2) provides an adequate remedy for a Miller violation would also be contrary to Gutierrez. In Gutierrez, the California Supreme Court rejected the People’s argument that the enactment of section 1170, subdivision (d)(2) eliminated the possibility that a defendant serving an LWOP sentence under California law for a crime committed as a juvenile, had suffered a Miller violation. (Gutierrez, supra, 58 Cal.4th at p. 1387.) The Gutierrez court reasoned in part: “The Attorney General contends that section 1170[, subdivision (d)(2)] removes life without parole sentences for juvenile offenders from the ambit of Miller s concerns because the statute provides a meaningful opportunity for such offenders to obtain release. In support of this contention, the Attorney General relies on a ‘cf.’ citation in Miller to language in Graham [v. Florida (2010) 560 U.S. 48 [176 L.Ed.2d 825, 130 S.Ct. 2011]].[9] (See Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2469] [‘Cf. Graham, 560 U.S., at _ [130 S.Ct., at p. 2030] (“A State is not required to guarantee eventual freedom,” but must provide “some meaningful opportunity to obtain release based on demonstrated maturity and *438 rehabilitation”).’]; see also Graham, supra, 560 U.S. at p. 75 [‘It is for the State, in the first instance, to explore the means and mechanisms for compliance.’].) However, Graham spoke of providing juvenile offenders with a ‘meaningful opportunity to obtain release’ as a constitutionally required alternative to—not as an after-the-fact corrective for—‘making the judgment at the outset that those offenders never will be fit to reenter society.’ (Graham, at p. 75, italics added.) Likewise, Miller’s ‘cf.’ citation to the ‘meaningful opportunity’ language in Graham occurred in the context of prohibiting ‘imposition of that harshest prison sentence’ on juveniles under a mandatory scheme. (Miller, at p. _ [132 S.Ct. at p. 2469].) Neither Miller nor Graham indicated that an opportunity to recall a sentence of life without parole 15 to 24 years into the future would somehow make more reliable or justifiable the imposition of that sentence and its underlying judgment of the offender’s incorrigibility ‘at the outset.’ (Graham, at p. _ [130 S.Ct. at p. 75].)” (Id. at p. 1386.)
Similarly, in People v. Lozano (2016) 243 Cal.App.4th 1126, 1138 [197 Cal.Rptr. 257] (Lozano), the California Court of Appeal concluded that a prisoner serving an LWOP sentence imposed for a crime committed as a juvenile ‘“does have a remedy under section 1170, subdivision (d)(2), but that remedy is not exclusive, nor is it a substitute for her Eighth Amendment right to a sentencing hearing considering amenability to rehabilitation in the first instance.” (Ibid., italics added.)
In addition to being inconsistent with case law from the United States Supreme Court, the California Supreme Court, and the California Court of Appeal, concluding that section 1170, subdivision (d)(2) provides an adequate remedy to those serving sentences imposed in violation of Miller raises serious constitutional concerns. Clearly, section 1170, subdivision (d)(2) does not provide an adequate remedy for those defendants serving juvenile LWOP sentences to whom the statute, by its terms, does not apply. Consider a petitioner such as the defendant in Montgomery, whose victim was a deputy sheriff. (Montgomery, supra, 577 U.S. at p. _ [136 S.Ct. at p. 725].) A defendant who kills a law enforcement officer is expressly disqualified from bringing a section 1170, subdivision (d)(2) petition. (See § 1170, subd. (d)(2)(A)(ii).)[10] To conclude that a statutory procedure for which the defendant is expressly disqualified affords an adequate remedy for an Eighth *439 Amendment violation would violate basic principles of due process. On the other hand, if Kirchner is intended to limit the habeas corpus remedies only for those defendants who are not disqualified from filing a section 1170, subdivision (d)(2) petition, this would raise equal protection concerns.
In any event, section 1170, subdivision (d)(2) does not provide an adequate remedy for Miller error even for those defendants who might ultimately obtain a resentencing pursuant to the statute. There is nothing in Miller or its progeny that suggests that a state may condition a prisoner’s right to receive a lawful sentencing hearing upon the prisoner’s success in a separate collateral proceeding. Thus, as Berg correctly argues in his supplemental brief, “Mr. Berg must be granted a resentencing hearing where the five Miller factors [outlined in Gutierrez] are the controlling factors before the sentencing court, not the miscellaneous factors dictated in . . . section 1170, subdivision (d)(2).”
4. We decline to follow Kirchner
As noted in part I., ante, in Kirchner, a panel of this court concluded that section 1170, subdivision (d)(2) “meets the requirements of Miller and Montgomery and is therefore an adequate remedy which Kirchner[11] must pursue before resorting to habeas corpus relief.” (Kirchner, supra, 244 Cal.App.4th at pp. 1418-1419.) Kirchner’s conclusion that section 1170, subdivision (d)(2) provides an adequate remedy for Miller error is unpersuasive for the following reasons.[12]
The Kirchner court stated that “although section 1170, subdivision (d)(2) does not provide an inmate with a parole hearing, it provides him or her with all the rights set forth in Miller and Montgomery.” (Kirchner, supra, 244 Cal.App.4th at p. 1416, italics added.) We disagree. As discussed in part III.C.3., ante, section 1170, subdivision (d)(2) affords many defendants sentenced to LWOP in violation of Miller none of the rights set forth in Miller and Montgomery, either because they are disqualified from obtaining relief under the statute or they do not meet the requirements for obtaining such relief. Further, section 1170, subdivision (d)(2) requires all prisoners *440 seeking to obtain resentencing for Miller error under the statute to prevail in a separate collateral proceeding before obtaining any of the rights guaranteed by Miller and Montgomery.
Further, the Kirchner court’s primary reason for concluding that section 1170, subdivision (d)(2) provides an adequate remedy for Miller error appears to be its (mistaken) assumption that only through a section 1170, subdivision (d)(2) proceeding may a court consider a defendant’s postconviction conduct. (Kirchner, supra, 244 Cal.App.4th at pp. 1416-1418.) The Kirchner court reasoned: “This procedure [outlined in section 1170, subdivision (d)(2)] of course responds to and remedies Justice Scalia’s concerns [expressed in his dissent in Montgomery], which are implicitly recognized by the majority in Montgomery, that, after perhaps decades in prison, a defendant cannot logically or in fairness be returned to the same status as existed on the day of sentencing. ... [¶] ... [¶] Were we to find that section 1170, subdivision (d)(2) was not an adequate remedy at law and, thus, not a petitioner’s exclusive remedy,[13] we would permit a petitioner to select whether to take advantage of section 1170, subdivision (d)(2) or seek a direct resentencing limited to those factors existing at the time of the original sentencing” (Id. at p. 1417, italics altered.)
This reasoning is unpersuasive because there is nothing in Miller, Gutierrez, or Montgomery that suggests, much less states, that a trial court is precluded from considering evidence of a defendant’s postconviction conduct in conducting a resentencing as a remedy for Miller error. On the contrary, a trial court is required to consider such evidence in determining a defendant’s amenability to rehabilitation upon resentencing. (Lozano, supra, 243 Cal.App.4th at pp. 1137-1138.)[14] In Lozano, in response to a defendant’s petition for habeas corpus, the People conceded that the defendant was entitled to a new sentencing hearing in light of Miller. (Lozano, supra, at pp. 1129-1130.) Upon resentencing, the trial court excluded evidence of Lozano’s postconviction rehabilitation. (Id. at p. 1137.) The Lozano court concluded that this ruling constituted error, reasoning: “In light of Miller and Gutierrez, we conclude the trial court could not categorically exclude Lozano’s proffered evidence of postconviction rehabilitation. As Gutierrez, supra, 58 Cal.4th at page 1390, interpreted Miller, ‘the trial court must consider all *441 relevant evidence bearing on the “distinctive attributes of youth” discussed in Miller and how those attributes “diminish the penological justifications for imposing the harshest sentences on juvenile offenders.” (Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2465].)’ All relevant evidence, in our view, includes what Lozano asserts is 15 years of rehabilitation in prison. Disregard of evidence of rehabilitation, under the circumstances presented here, is inconsistent with the focus required by Miller and Gutierrez.” (Id. at pp. 1137-1138.)
The Lozano court also specifically rejected the People’s argument that evidence of postconviction conduct could be presented only in a petition for resentencing under section 1170, subdivision (d)(2): “We reject the Attorney General’s argument that Lozano’s proper forum for introduction of evidence of postconviction rehabilitation is via a petition for resentencing under section 1170, subdivision (d)(2). Gutierrez effectively disposes of this contention in its recognition that amenability to rehabilitation must be considered at sentencing before imposition of an LWOP sentence. (Gutierrez, supra, 58 Cal.4th at pp. 1386-1387.)” (Lozano, supra, 243 Cal.App.4th at p. 1138.)[15]
There is also nothing in the text of section 1170, subdivision (d)(2) that manifests the Legislature’s intent to create a procedure for providing a remedy for Miller error. Rather than providing a mechanism for recalling sentences imposed in violation of Miller, section 1170, subdivision (d)(2) provides a statutory procedure by which defendants whose LWOP sentences were validly imposed may seek to recall such sentences by making the requisite statutory showing. However, the Kirchner court’s holding requiring that the statute be used to remedy Miller error led the court to further conclude that the statute must be applied in a manner that finds no support in the text of the statute. Specifically, the Kirchner court imposed upon the People the burden of proof in a section 1170, subdivision (d)(2)/Miller remedy proceeding. (See Kirchner, supra, 244 Cal.App.4th at p. 1418 [“a petition under section 1170, subdivision (d)(2) will meet the requirements of Miller and Montgomery, only if, at both the trial court’s review of the sufficiency of the petition (see § 1170, subd. (d)(2)(E)) and at any hearing ordered thereafter, the People bear the burden, as they would at any initial sentencing under Miller and Gutierrez, of showing that the defendant is one of the rare individuals for whom no possibility of parole should be provided” (italics added)].)[16]
*442 There is no support for the Kirchner court’s reassigning of the burden of proof to the People in the statutory language. On the contrary, section 1170, subdivision (d)(2) clearly places the burden of proof on the defendant. The statute provides that ‘“[t]he defendant shall file the original petition with the sentencing court” (id., subd. (d)(2)(B), italics added), requires that the petition contain the “defendant’s statement” that various qualifying factors are true (ibid., italics added), authorizes the People to file a “reply to the petition” (id., subd. (d)(2)(D), italics added), and mandates that the court shall hold a hearing ‘“[i]f the court finds by a preponderance of the evidence that the statements in the petition are true” (id., subd. (d)(2)(E), italics added). Placing the burden of proof on the defendant is consistent with the statute’s purpose of providing a defendant who is serving a lawfully imposed LWOP sentence with the opportunity to obtain a new sentence.
Finally, we are not persuaded by the Kirchner court’s assertion that ”[o]ur conclusion the remedy provided by section 1170, subdivision (d)(2) meets the requirements of Montgomery, does not conflict with the holding in Gutierrez.” (Kirchner, supra, 244 Cal.App.4th at p. 1419.) As the Kirchner court acknowledged, the Gutierrez court explicitly concluded ‘“that the possibility that an LWOP sentence would later be recalled and a new sentence imposed under section 1170, subdivision (d)(2) did not cure the defect in the original sentence.” (Ibid., italics added.) Thus, the Kirchner court’s conclusion that section 1170, subdivision (d)(2) does provide an adequate remedy for a Miller violation conflicts with Gutierrez. While the Kirchner court noted that Gutierrez was decided in the context of a direct appeal while Kirchner’s case arose in the context of a collateral proceeding, there is nothing in Gutierrez that suggests that this distinction had any bearing on the court’s decision. Further, given that the United States Supreme Court in Montgomery held that Miller must be given retroactive effect in collateral proceedings, we see no reason why this distinction should have any relevance in this context.
Accordingly, we decline to follow Kirchner and instead conclude that section 1170, subdivision (d)(2) does not provide an adequate remedy for a defendant seeking collateral relief for Miller error.
IV.
DISPOSITION
The trial court’s order granting Berg’s petition for writ of habeas corpus is affirmed.
Haller, Acting P. J., concurred.

 Unless otherwise specified, all subsequent statutory references are to the Penal Code.

 Our factual summary is based on the probation report because Berg pled guilty to the commitment offenses and there was thus no trial in this case.

 Berg also claimed that the punishment violated the prohibition of cruel or unusual punishments under article I, section 17 of the California Constitution. However, only the federal claim is relevant to this appeal.

 Given that the sentencing in this case occurred long before Miller and Gutierrez were decided, it is entirely understandable that the sentencing court did not address the principles espoused in these later decided cases. However, “[a] court commits error where it acts contrary to a higher court’s articulation of the law, even if such error is understandable given the state of the law at the time the lower court acted.” (People v. Bryant (2013) 222 Cal.App.4th 1196, 1208 [166 Cal.Rptr.3d 496] (conc. opn. of Aaron, J.).)

 Given that Kirchner was not decided until after the habeas corpus court entered its order granting Berg’s petition in this case, we exercise our discretion to consider this issue even though the People did not raise this contention in the trial court. (See People v. Williams (1998) 17 Cal.4th 148, 161, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429] [“An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party.”].)

 Section 1170, subdivision (d)(2)(A) provides:
“(i) When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing.
“(ii) Notwithstanding clause (i), this paragraph shall not apply to defendants sentenced to life without parole for an offense where the defendant tortured, as described in Section 206, his or her victim or the victim was a public safety official, including any law enforcement personnel mentioned in Chapter 4.5 (commencing with Section 830) of Title 3, or any firefighter as described in Section 245.1, as well as any other officer in any segment of law enforcement who is employed by the federal government, the state, or any of its political subdivisions.”

 “In addition to the criteria in subparagraph (F), the court may consider any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria.” (§ 1170, subd. (d)(2)(I).)

 As described in part III.C.2., ante, section 1170, subdivision (d)(2) directs trial courts to consider a host of factors, some of which are completely unrelated to those discussed in Miller, before granting resentencing. (See, e.g., § 1170, subd. (d)(2)(F)(vii) [listing whether “[t]he defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime,” as a factor to consider in determining whether to grant a § 1170, subd. (d)(2) petition].)

 In Graham, the United States Supreme Court held that “the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender.” (Graham v. Florida, supra, 560 U.S. at p. 75.)

 Those prisoners who are expressly disqualified by section 1170, subdivision (d)(2)(A)(ii). are not the only prisoners effectively unable to obtain relief under section 1170, subdivision (d)(2). If a prisoner’s petition does not contain a “statement describing his or her remorse and work towards rehabilitation” (id., subd. (d)(2)(B), the petition is facially deficient and a trial court is required to “return the petition to the defendant . . .” (id., subd. (d)(2)(C)). Thus, a prisoner who maintains his innocence, and therefore, would not be in a position to express remorse, would also be ineligible to obtain relief for Miller error via section 1170, subdivision (d)(2).

 The Kirchner court stated that its opinion was “limited to inmates, who, like Kirchner, have been incarcerated for at least 15 years” of an LWOP sentence imposed for a crime committed by the inmate as a juvenile. (Kirchner, supra, 244 Cal.App.4th at p. 1405 & fn. 1.) It is unclear under Kirchner whether a prisoner must wait 15 years before attempting to obtain relief for Miller error pursuant to section 1170, subdivision (d)(2) or whether more recently sentenced inmates may seek habeas corpus relief without regal'd to the statute.

 While we acknowledge that we ordinarily follow prior decisions from this court, we are not bound to do so. We may depart from such decisions when there are “ ‘good reasonfs]’ ” for doing so. (Lucent Technologies, Inc. v. Board of Equalization (2015) 241 Cal.App.4th 19, 35 [193 Cal.Rptr.3d 323].)

 While portions of the Kirchner opinion appeal' to indicate that a prisoner must file a section 1170, subdivision (d)(2) petition “before resorting to habeas corpus relief’ (Kirchner, supra, at p. 1419, italics added), this portion of the opinion suggests that section 1170, subdivision (d)(2), is a prisoner’s “exclusive remedy” for Miller error. (Kirchner, supra, at p. 1417.) We conclude that both conclusions are incorrect, for the reasons stated in the text.

 Indeed, the Kirchner court itself recognized this point, stating, elsewhere in its opinion, “the court in Montgomery made it unambiguously clear that, in collateral proceedings, a defendant’s release may, under the Constitution, depend in part at least on his postconviction behavior.” (Kirchner, supra, 244 Cal.App.4th at p. 1413.)

 The Kirchner court did not cite Lozano, which was decided a little more than a month before Kirchner.

 It is not clear whether the Kirchner court concluded that the People always bear the burden of proof in a section 1170, subdivision (d)(2) proceeding, or bear the burden only when the proceeding is used to remedy Miller error. Either result is problematic. The former is *442 inconsistent with the statutory language. The latter demonstrates the Kirchner court’s misapplication of the statute in a context unintended by the Legislature.