Filed 4/24/26  P. v. Palafox CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LUIS WILLIAM PALAFOX,<br><br>  Defendant and Appellant. | F087986<br><br>(Super. Ct. No. BF125737B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen, Darren K. Indermill and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2010, appellant and defendant Luis William Palafox (appellant) and codefendant Kyle Hoffman (Hoffman) were convicted after a jury trial of the first degree murders of Joseph and Dorothy Parrott, and three special circumstances were found true. The victims were killed by both sharp- and blunt-force injuries to their heads and necks. Both appellant and Hoffman were 16 years old when they committed the offenses. (*People v. Palafox* (2014) 231 Cal.App.4th 68, 73 (*Palafox*).) They were each sentenced to two consecutive terms of life in prison without the possibility of parole (LWOP).

In their joint direct appeal, this court affirmed the convictions and remanded for resentencing pursuant to *Miller v. Alabama* (2012) 567 U.S. 460, 465 (*Miller*). After remand, the trial court again sentenced both appellant and Hoffman to two consecutive LWOP terms, and this court affirmed the trial court's resentencing decision. (*Palafox*, *supra*, 231 Cal.App.4th at p. 73.)

In 2024, appellant, acting in propria persona, filed a petition for recall and resentencing pursuant to Penal Code[1] section 1170, subdivision (d), which states in relevant part that "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing," if the defendant meets additional statutory requirements. (§ 1170, subd. (d)(1)(A).) For recall eligibility, the trial court also must find by a preponderance of the evidence (§ 1170, subd. (d)(5)) that the defendant met his burden to establish one of four circumstances stated in section 1170, subdivision (d)(2)(A)–(D).

If the defendant meets his burden to prove the eligibility criteria, the court shall recall the LWOP sentence and conduct a hearing "to resentence the defendant in the same

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).) Section 1170, subdivision (d) states several factors the court "may" consider when exercising its discretion whether to impose a lesser sentence, and the court retains discretion to again impose the LWOP term. (§ 1170, subd. (d)(5)–(11).)

If, however, any of the statutorily required information is "missing from the petition," the court "shall return the petition to the defendant and advise the defendant that the matter cannot be considered without the missing information" instead of denying the petition. (§ 1170, subd. (d)(3).)

In his petition, appellant asserted he had been incarcerated for at least 15 years, and he satisfied two of the recall eligibility circumstances: he stated, without supporting evidence, that he did not have prior juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims before committing the life offense (§ 1170, subd. (d)(2)(B)); and he had performed acts that tend to indicate rehabilitation or the potential for rehabilitation, and filed documentary evidence in support of his rehabilitation statement. (§ 1170, subd. (d)(2)(D).)

The trial court did not appoint counsel and summarily denied appellant's petition to recall because it found he had not been incarcerated in the Department of Corrections and Rehabilitation (CDCR) for at least 15 years as required by section 1170, subdivision (d)(1)(A). The court also found appellant failed to prove by a preponderance of the evidence that he satisfied at least one of the recall eligibility circumstances because there was no evidence to support his statement that he did not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall, and the court found he had not performed sufficient acts tending to indicate his rehabilitation or potential for rehabilitation.

3.

***Appeal and Supplemental Briefing***

In this appeal from the trial court's denial of appellant's section 1170, subdivision (d) petition, appellant argued the trial court erroneously found he had not been incarcerated for 15 years because preconviction detention must be included, he met his burden to prove his lack of a prior record by his affirmation in a supporting statement, and he met his burden to prove the rehabilitation circumstance based on his supporting documents. Appellant requested remand for recall and resentencing or, if we found his supporting statement about his lack of a prior record was insufficient, the matter should be remanded and the trial court instructed to permit him to file an amended petition under section 1170, subdivision (d)(3).

After initial briefing, this court filed an order advising the parties it was considering whether to take judicial notice of the record and nonpublished opinion in appellant's direct appeal, *People v. Hoffman et al.* (July 5, 2012, F061127) as modified July 30, 2012 (*Hoffman*), which affirmed his convictions and remanded for resentencing pursuant to *Miller*; and the record in *Palafox*, *supra*, 231 Cal.App.4th 68 (F067413), that affirmed the trial court's resentencing order on remand.

This court also ordered the parties to file supplemental briefs and address the impact of statements in *Palafox*, *supra*, 231 Cal.App.4th at page 80, and the records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, that appellant had no prior record of criminal conduct, as relevant to the recall eligibility circumstance described in section 1170, subdivision (d)(2)(B), and whether the trial court's alleged errors in denying his petition were harmless in light of the trial court's additional finding he failed to meet his burden to prove the rehabilitation circumstance for recall eligibility in section 1170, subdivision (d)(2)(D), since the court may consider that same circumstance after recall when deciding whether to exercise its discretion to impose a sentence less than LWOP (§ 1170, subd. (d)(6)(F)).

4.

In response, appellant argued the probation report, the opinion in *Palafox*, *supra*, 231 Cal.App.4th 68, and other judicially noticed records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, supported his statement in the petition that he had no prior criminal record. He argued the trial court's errors were not harmless because section 1170, subdivision (d)(6) states additional factors for the trial court to consider at a resentencing hearing, and requested remand for recall and resentencing.

The People acknowledged the trial court's custodial finding was erroneous and appellant had been incarcerated for at least 15 years when he filed his petition. However, the People asserted the trial court's other findings were supported by the record that was before the court, the judicially noticed records cannot be considered since they were not before the trial court, appellant failed to meet his burden of proving his eligibility, and any errors were harmless given the trial court's negative finding on the rehabilitation circumstance, which would apply to the identical resentencing factor.

On August 21, 2025, we filed the nonpublished opinion in the instant appeal, took judicial notice of this court's records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, and the nonpublished opinion in *Hoffman*, *supra*, F061127, and concluded the trial court's errors were harmless given its additional finding that appellant failed to satisfy the rehabilitation eligibility circumstance, since it is also an enumerated factor for resentencing.

### *Proceedings after remand*

In November 2025, the California Supreme Court granted appellant's petition for review and transferred the matter back to this court "with directions to vacate its decision and reconsider the cause in light of *People v. Salazar* (2023) 15 Cal.5th 416 and *People v. Lynch* (2024) 16 Cal.5th 730." (*People v. Palafox*, S292909, Supreme Ct. Mins., Nov. 25, 2025.) *Lynch* and *Salazar* held that when a trial court is not aware of the full scope of its sentencing discretion, "a defendant is entitled to a remand for resentencing unless the record ' " 'clearly indicate[s]' that the trial court would have reached the same

5.

conclusion 'even if it had been aware that it had such discretion.' " ' [Citation.]"
(*People v. Lynch* (2024) 16 Cal.5th 730, 771–772 (*Lynch*), quoting *People v. Salazar*
(2023) 15 Cal.5th 416, 425 (*Salazar*).)

We vacated our prior opinion and ordered the parties to file supplemental briefs as
to the application of *Salazar* and *Lynch* to this case.

In their supplemental briefs, both appellant and the People agree the instant matter
must be remanded but disagree as to the nature of that remand. Appellant argues that
based on the judicially noticed records, this court must find he is eligible for recall and
order the trial court to conduct the resentencing hearing. The People counter that on
remand, appellant should be directed to file an amended petition based on the judicially
noticed records that were not previously before the trial court, in order for the court to
make the eligibility finding and conduct further proceedings.

After considering the parties' arguments, we take judicial notice of this court's
records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, and the nonpublished
opinion in *Hoffman*, *supra*, F061127.

We find the trial court's ruling on the calculation of appellant's period of
incarceration was erroneous as a matter of law, and appellant's preconviction custody
must be included to calculate he had been incarcerated for 15 years when he filed his
section 1170, subdivision (d) petition.

We find the record before the trial court did not support appellant's statement in
his petition that he did not have a prior criminal record. This court's published opinion in
*Palafox*, *supra*, 231 Cal.App.4th 68, and the judicially noticed records in *Hoffman*, *supra*,
F061127, and *Palafox*, *supra*, F067413, contain evidence that he did not have a prior
criminal record. These records were not before the trial court, however, and this court
declines to make factual findings.

We further find the record before the trial court supported its finding that appellant
failed to meet his burden of proof as to the rehabilitation eligibility circumstance.

6.

We agree with the parties that remand is required under *Salazar* and *Lynch* because the record does not clearly indicate the trial court would have declined to resentence appellant to a lower term if it had been aware of its erroneous eligibility ruling and the entirety of the statutory resentencing circumstances.

As we explain below, the trial court on remand shall grant appellant's request in his petition for appointment of counsel pursuant to section 1171, subdivision (c)(1), he shall file an amended petition for resentencing pursuant to section 1170, subdivision (d)(3) with the appropriate supporting evidence, and the trial court shall make factual findings to determine his eligibility for recall and resentencing, and conduct further appropriate proceedings.

## FACTS[2]

### Evidence Heard by Both Juries[3]

---

[2] The following factual and procedural summaries are from the judicially noticed records and *Palafox*, *supra*, 231 Cal.App.4th 68.

[3] The murder charges against appellant and Hoffman were consolidated for trial and they were tried together, but separate juries were impaneled for each defendant and the trial court limited the evidence heard by each jury. (*Palafox*, *supra*, 231 Cal.App.4th at p. 74.) Neither appellant nor Hoffman testified at trial. Hoffman's separate jury heard evidence about Hoffman's confession that implicated appellant as committing the murders. (*Palafox*, *supra*, 231 Cal.App.4th at p. 74.)

The empanelment of separate juries was likely based on *People v. Aranda* (1965) 63 Cal.2d 518 and *Bruton v. United States* (1968) 391 U.S. 123. "Broadly stated, the *Aranda/Bruton* rule declares that a defendant is deprived of his or her Sixth Amendment right to confront witnesses when a facially incriminating statement of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the statement only against the declarant. [Citation.]" (*People v. Gallardo* (2017) 18 Cal.App.5th 51, 68.) "[T]he problem addressed in *Bruton* and *Aranda* may be solved by the use of separate juries for codefendants, with each jury to be excused at appropriate times to avoid exposure to inadmissible evidence." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1208; see *People v. Washington* (2017) 15 Cal.App.5th 19, 27.)

"Early on the morning of August 6, 2008,[4] Bakersfield Police Officer Woessner was investigating an abandoned stolen vehicle when he heard a car alarm coming from the 4400 block of Belle Terrace.  He saw [appellant] walking away from the vehicle that was emitting the alarm; when Woessner identified himself and asked him to stop, [appellant] ran.  Woessner caught and detained [appellant].  [Appellant] had a dagger with a four-inch-long, double-sided blade in his sock.  [Appellant] was arrested for having the knife, which was seized and booked into the police department's property room.

"Later that morning, Richard [P.], the son of Joseph and Dorothy Parrott, received a telephone call from his cousin saying Dorothy had not shown up as scheduled to take Richard's aunt to an appointment.[5]  Richard was unable to make telephonic contact with his parents, whom he had last seen on the morning of August 4.  As a result, he went to their Bakersfield home.  As he approached, he saw that a window had been dislodged from the door on the side of the house.  Richard yelled inside the house but, getting no response, went back out front and called his cousin, Gerald [G.], and asked him to come over.

"[Gerald] arrived a short time later and went to the back of the house, where he found the sliding door open.  He and Richard telephoned again and heard the phone ringing inside, but there was no answer despite the fact both cars were in the garage.  At that point, Richard called 911.

"Officer Knutson and his partner arrived at about 1:45 p.m.  After contacting Richard outside, the officers entered through the open rear sliding glass door and conducted a protective sweep of the residence.  Knutson observed a small wooden box in

_____

**4** "Unspecified references to dates are to dates in 2008."

**5** For the sake of clarity, the Parrotts will be referred to by their first names.  For privacy, additional persons are referred to by their first names. (Cal. Rules of Court, rule 8.90.)  No disrespect is intended.

8.

the middle of the hallway, with jewelry on the floor next to it. There was nobody in the first bedroom off the hallway. In the second bedroom, he found an elderly male, subsequently identified as Joseph, lying dead on the bed. There was dry blood on his face, the blankets, and the pillow. The pillow was covering his face, and it appeared someone had pushed it down in that position. There were also what appeared to be lacerations to his neck. In the master bedroom, Knutson found an elderly female, subsequently identified as Dorothy, lying dead on the bed. A pillow with dried blood on it was covering her face. Her skull was partially crushed in.

"There was extensive blood spatter in the rooms in which the bodies were found, especially the one in which Dorothy was located. The cast-off blood stains and arch patterns in both rooms indicated a striking of multiple blows. There was also impact spatter on and above the headboard in the room in which Dorothy was found. Impact spatter results from an object striking a source of exposed blood. There was no trail of blood between the two bedrooms or out of the room in which Dorothy was found. There was no drip trail from the implement used.

"Shoe tracks were found in the tile hallway that connected the kitchen, laundry room, garage, and living room area on one end, with the bedrooms and office on the other end. It appeared someone had gone through dressers, nightstands, a file cabinet, jewelry boxes, and a jewelry armoire in various rooms.

"Joseph's autopsy revealed that he had eight individual sharp-force injuries along the left side of his neck, ranging in depth from one and a half to three and a quarter inches. Although the stab wounds appeared to have been made by a single-edged implement, this could not be determined with certainty, because the body was going through the stages of decomposition and so the wounds were somewhat dried. Dried edges can make what was caused by a double-edged blade appear to have been made by a single-edged blade. Joseph also had possible defensive wounds on his left hand. The left side of his jaw was fractured, and he suffered a subarachnoid hemorrhage (bleeding

9.

between the brain and the skull).  Bruising on his left shoulder was linear, suggesting he was struck with a linear object.  Death, which was caused by sharp[-] and blunt-force injuries, was not instantaneous.

"Dorothy's autopsy revealed that she had trauma to her face and both sides of her head.  The left side of her face showed blunt[-]force trauma with linear bruising.  The entire right side of her face basically was crushed.  She had a large laceration, and her right eye was pushed backwards into her cranial vault.  She had numerous skull fractures, two of which were in a circular pattern, meaning there was an actual impact by an object.  That sort of fracture could be consistent with being struck by a linear object such as a baseball bat.  Because of the skull fractures, there was tearing of the brain itself.  Such crushing of the skull required a significant amount of force.  Dorothy also had linear contusions from blunt[-]force trauma to her abdomen, left flank to left shoulder, and right shoulder.  The linear bruising observed on Dorothy was similar to that noted on Joseph, and the blunt[-]force injuries to both could be consistent with being caused by the same or a similar type of weapon.  Because all of the bruises corresponded to extensive hemorrhaging into the soft tissues of the fat of Dorothy's back, it meant her heart was still beating when she received those injuries.  In addition, Dorothy had multiple contusions to the upper left arm, just below the shoulder.  Some were linear abrasions, but two were in the shape of an inverted C.  They could be consistent with the knob end of a baseball bat.  The cause of death was blunt[-]force head trauma.

"Dr. Wallis-Butler, the forensic pathologist who performed both autopsies, could not give an exact time of death because so many factors came into play.  She estimated though that, depending on the environment and based on the bodies' degree of decomposition, death occurred 12 to 36 hours earlier.

"On November 23, a search warrant was executed at an apartment in the 4400 block of Belle Terrace in which Hoffman resided.  Joseph's state quarter collection was found in one of the bedrooms.  Seized from a closet in the same bedroom were a pair of

10.

shoes that, although they could not be positively identified as the ones that made the tracks in the Parrotts' hallway, were the same size, had the same or a very similar tread pattern, and had a similar wear pattern.

"Also on November 23, a search warrant was executed at the Moreno Valley residence of [appellant's] mother. Some of Joseph's rings were found in two of the bedrooms. [Appellant] was located in Whittier and arrested. The knife seized from him on August 6 (the morning the bodies were discovered) was examined. DNA analysis showed that a 15-loci genetic profile developed from blood found where the blade met the hilt matched Joseph's genetic profile. The probability of selecting the DNA profile from a population of random unrelated individuals was estimated to be one in 670 quadrillion Caucasians, one in 2.1 quintillion African-Americans, and one in 7.3 quintillion Hispanics." (*Hoffman*, *supra*, F061127.)

**Evidence Heard Only by Appellant's Jury**

"K.M., Hoffman's sister, testified under a grant of immunity. During August through November, [appellant] lived in Moreno Valley. In August, [appellant] stayed with her family, including Hoffman, in an apartment on Belle Terrace. At the time, K.M. had a full-sized Dodgers baseball bat.

"At some point, K.M. was around [appellant and Hoffman] when the two were talking about going into someone's house and stealing. On August 4, the two left the apartment around 11:00 p.m. or midnight and did not return until 3:00 a.m. or later. They took the bat with them and returned with it. Around that same time frame, K.M. was in her room with [appellant and Hoffman] and she touched the bat. [Appellant and Hoffman] both reacted, and [appellant] told her not to touch it. After that, [appellant] took the bat away and she never saw it again. At some point at the beginning of August, K.M. looked into Hoffman's backpack. In it, she saw jewelry and a couple hundred dollars. [Appellant] said they had gotten the money and jewelry when they were out breaking into cars.

11.

"In September or October, K.M. spoke to [appellant] by telephone and asked him if he was involved in a murder that occurred during a break-in at a house. [Appellant] said something like she should not be talking about it with him over the phone.

"[A law enforcement officer] interviewed K.M., who was not in custody, at the Bakersfield Police Department in November. K.M. volunteered that she had called [appellant] and asked him about his involvement in the murders. [Appellant] denied, more than once, knowing what she was talking about. When K.M. became more 'blunt,' basically telling him, 'like murder, retard,' [appellant] paused, then replied 'yeah.' [Appellant] directed her not to talk about it on the phone." (*Hoffman*, *supra*, F061127.)

## PROCEDURAL BACKGROUND

On February 17, 2009, an information was filed in the Superior Court of Kern County charging appellant and Hoffman with two counts of murder, with multiple murder, robbery, and burglary special circumstances.[6] As noted above, the trials for appellant and Hoffman were consolidated and separate juries were impaneled.

On August 24, 2010, the respective juries convicted appellant and Hoffman of two counts of first degree murder (§ 187, subd. (a)), and found true the multiple murder (§ 190.2, subd. (a)(3)), robbery/murder (§ 190.2, subd. (a)(17)(A)), and burglary/murder (§ 190.2, subd. (a)(17)(G)) special circumstances.[7]

---

[6] As to both counts, it was alleged both appellant and Hoffman were 16 years of age or older when they committed the murders, and murder was an offense listed in Welfare and Institutions Code section 707, subdivision (b), within the meaning of Welfare and Institutions Code section 707, former subdivision (d)(1). At that time, Welfare and Institutions Code section 707, former subdivision (d) conferred "upon prosecutors the discretion to bring specified charges against certain minors directly in criminal court, without a prior adjudication by the juvenile court that the minor is unfit for a disposition under the juvenile court law." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 545.)

[7] The jury found the multiple-murder special circumstance true as to each count. The trial court properly ordered the finding attached to count 2 stricken. (*Hoffman*, *supra*, F061127.)

On September 22, 2010, the court sentenced appellant to two consecutive LWOP terms. Hoffman received the same sentence.

**Direct appeal**

In the joint direct appeal of appellant and Hoffman, this court filed a nonpublished opinion that rejected Hoffman's evidentiary and instructional challenges, rejected the arguments of appellant and Hoffman that imposition of LWOP on a juvenile violated the federal and state Constitutions, ordered the parole revocation fines stricken, and affirmed the judgment as modified. (*Hoffman*, *supra*, F061127; accord, *Palafox*, *supra*, 231 Cal.App.4th at p. 74.)

Both appellant and Hoffman filed a petition for rehearing on the imposition of the LWOP terms. This court filed a modified opinion on denial of rehearing and addressed *Miller*, which held the Eighth Amendment prohibits sentencing schemes that mandate LWOP sentences for juvenile offenders convicted of certain homicide offenses. This court "found the trial court did not abuse its discretion under the law as it stood when it sentenced [appellant] and Hoffman. Nevertheless, we concluded that because the 'characteristics discussed in *Miller* were not at the forefront of the factors considered by the trial court when exercising its discretion . . . , [appellant and Hoffman were] entitled to have the trial court reconsider its decision under section 190.5, subdivision (b) in light of *Miller*, and to be resentenced accordingly.' [Citation.] As a result, we affirmed the judgments of conviction, but vacated the sentences and remanded the matters to the trial court 'to exercise its discretion under . . . section 190.5 in light of *Miller*' and to resentence [appellant] and Hoffman. [Citation.]" (*Palafox*, *supra*, 231 Cal.App.4th at pp. 74–75; see *Hoffman*, *supra*, F061127.)

**Resentencing on remand**

On May 24, 2013, Judge Somers, who had presided over the joint jury trial, conducted the resentencing hearing for both appellant and Hoffman. Appellant did not present any witnesses at the hearing. The trial court granted appellant's request to take

judicial notice "of the evidence adduced at trial; the evidence presented in support of the motions (*including statements made by* [appellant] *and Hoffman*), and the rulings, that resulted in two juries hearing the case; and [appellant's] submissions and arguments at the original sentencing hearing." (*Palafox*, *supra*, 231 Cal.App.4th at p. 75, fn. 4, italics added.)

The trial court also considered a report introduced by appellant, and written by Angela Mason, a licensed clinical social worker; the prosecution waived any evidentiary objections. (*Palafox*, *supra*, 231 Cal.App.4th at p. 75.) According to Mason's report, Hoffman was appellant's uncle, appellant's mother used drugs, and his father was a gang member. After appellant's parents split up, appellant's mother lived with another gang member. (*Id*. at pp. 75–76.) Mason reported that appellant's family " 'suffered from multigenerational abject poverty.' Research has shown 'poverty damages children's dispositions, blunts their brains, and causes permanent brain damage from excessive exposure to toxic stress.' Mason surmised a ' "blunted brain" ' may have made [appellant] appear cold and distant to doctors and probation officers, when in reality he may have been showing the signs of poverty and its effects." (*Id*. at p. 76.)

Mason concluded appellant had " 'nearly every imaginable risk factor for violence and delinquency,' while lacking protective buffering factors other than the positive influence of one of his aunts. She also listed the various factors that shaped [appellant's] life and influenced his involvement in the instant offense. She ended her report by observing that [appellant's] mother left [him] with his grandmother in Bakersfield. Because of her long history of drug addiction and poor parenting skills, the grandmother could not supervise or comfort [appellant], who was emotionally distraught over his mother's and [her boyfriend's] violence and separation. Mason surmised Hoffman 'likely took advantage of his younger nephew [appellant] by encouraging his involvement in the instant offense.' " (*Palafox*, *supra*, 231 Cal.App.4th at p. 78.) "Mason related that [appellant] felt sorry for the Parrotts' deaths, and wished things were

14.

different. He knew he did wrong and felt he belonged in prison. He wanted to be a better person." (*Id*. at p. 77.) "Other than conveying [appellant's] expression of remorse and desire to be a better person, however, the report did not address any potential for rehabilitation." (*Id*. at p. 92, fn. 17.)

In argument to the trial court, appellant's counsel "acknowledged [appellant] was a full participant in the Parrott murders, which counsel termed 'horrible' and 'inexcusable,' and that [appellant] and Hoffman were mature, intelligent, and articulate. Counsel argued [appellant] was 16 when these crimes were committed, people change and grow over time, and [he] was going to be severely punished even without an LWOP sentence." (*Palafox*, *supra*, 231 Cal.App.4th at p. 78.) The prosecutor asserted "the murders were 'about as bad as it gets,' and pointed out the Parrotts '[did not] have to die.' " (*Ibid*.)

The trial court stated this case involved "brutal homicides" and was "one of the worst homicide situations that I had seen in nearly 30 years." The court again imposed two consecutive LWOP terms for both appellant and Hoffman:

> " '[W]hen I weigh these factors [in *Miller*], the one that is by far the greatest weight to me is the circumstances of the offences [*sic*] that were committed in this particular case and not just the severity and brutality of the crimes involved, but the fact that there is absolutely no question that the potential consequences to the Parrotts, who were doing nothing other than sleeping in their own home, were unaware prior to the assaults at the beginning, as far as anyone can tell presence, certainly outside their home as the discussion is taking place that [appellant] and Mr. Hoffman were calculating and considering violating their rights and perhaps even inflicting harm on them, and the fact that there was discussion of the fact and the presence of the weapon, at least one weapon, ultimately more, to for lack of a better term execute the Parrotts if in fact their presence became or was perceived to be a problem in terms of Mr. Hoffman and [appellant] carrying out their objectives of taking what property they wished to be found inside. [¶] I find almost more chilling than . . . what happened . . . when the offences [*sic*] were committed the fact two individuals in question stood outside at some point and had a discussion about what to do to the

people inside if they were located. That to me is almost a very definition of premeditated murder.' " (*Palafox*, *supra*, 231 Cal.App.4th at pp. 80–81.)[8]

**Appellant's appeal after resentencing**

Appellant filed an appeal from the trial court's resentencing decision; Hoffman did not join. In *Palafox*, *supra*, 231 Cal.App.4th 68, we granted appellant's request to take judicial notice of the entirety of the appellate record and opinion in *Hoffman*, *supra*, F061127, which the trial court had also considered at the resentencing hearing. (*Palafox*, at p. 73, fn. 1.) We noted the trial court found appellant "had no previous criminal history" but this factor was not dispositive. (*Id.* at p. 80.)

> "[W]e have subjected the constitutionality of the sentence to our independent review, taking into consideration [appellant]'s age and its hallmark features [citations], record information regarding [appellant]'s family and home environment [citations], and record evidence and information regarding the circumstances of the murders, including whether substance abuse played a role [citations]. We have considered whether [appellant]'s youth had any effect on how he was charged or whether he was somehow disadvantaged in the criminal proceedings [citations], but find no evidence or information suggesting this factor is applicable to [appellant]'s case. Finally, we have examined the record for any evidence or other information bearing on the possibility of rehabilitation. [Citations.] Other than [appellant]'s age and lack of past criminal history, we find none—only speculation. Speculation is insufficient to render unconstitutional a sentence that otherwise passes constitutional muster." (*Palafox*, *supra*, 231 Cal.App.4th at pp. 91–92, fn. omitted.)

We concluded the trial court properly considered relevant evidence as required by *Miller*, it did not abuse its discretion when it again imposed consecutive LWOP sentences, and appellant's aggregate sentence did not violate the federal or state Constitution. (*Palafox*, *supra*, 231 Cal.App.4th at pp. 80, 91–92.)[9]

---

[8] The abstract of judgment filed on October 1, 2010, showed appellant was sentenced to LWOP terms for both murder convictions but it did not state the terms were consecutive. On June 5, 2013, an amended abstract of judgment was filed that showed appellant was sentenced to two consecutive LWOP terms.

[9] After this court affirmed the trial court's imposition of the two consecutive LWOP terms in *Palafox*, *supra*, 231 Cal.App.4th 68, the California Supreme Court

16.

## APPELLANT'S PETITION FOR RECALL

On January 3, 2024, appellant, acting in propria persona, filed a petition for recall and resentencing of his two consecutive LWOP terms, and certification of his case to juvenile court for disposition, pursuant to section 1170, subdivision (d). Appellant filed supporting points and authorities and documentary evidence, and requested appointment of counsel.

**Appellant's arguments**

In his supporting points and authorities, appellant stated he was eligible for recall and resentencing because he met the statutory requirements of section 1170, subdivision (d)(1) and (2): he was born in March 1992, and he was 16 years old when the offenses were committed in August 2008; he was sentenced to two consecutive LWOP terms in 2010; he had been in custody since November 24, 2008, and had been incarcerated for at least 15 years; he filed supporting statements and documents about his remorse and work toward rehabilitation; and his petition was filed with the court and a copy served on the prosecutor's office.

Appellant's petition next addressed section 1170, subdivision (d)(2)(A)–(D), which requires the trial court to find by a preponderance of the evidence that he met one of four enumerated circumstances to mandate recall of his sentence.

### *Prior felony offense eligibility circumstance* (§ 1170, subd. (d)(2)(B))

Appellant stated he satisfied the eligibility circumstance that he "had never been convicted of any felony assault crimes" prior to committing the LWOP offenses, as stated in section 1170, subdivision (d)(2)(B).[10]

---

denied appellant's petition for review, and the United States Supreme Court denied his petition for writ of certiorari.

[10] As will be discussed in part I., *post*, the prior offense eligibility circumstance in section 1170, subdivision (d)(2)(B) states: "The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall."

17.

In a handwritten "Statement of Qualifying Factors," which appellant did not sign, he "affirm[ed]" his birthdate, he was under the age of 18 years at the time of the offenses, and he did not have any juvenile adjudications or adult felony convictions for assaultive offenses prior to the murders. Appellant did not file any documents to support this statement.

### Rehabilitation eligibility circumstance

Also in the petition, appellant stated he satisfied a second eligibility circumstance, that he performed acts that tended to indicate his rehabilitation or the potential for rehabilitation, as stated in section 1170, subdivision (d)(2)(D).[11] In his "Statement of Qualifying Factors," appellant affirmed that he had performed acts that tended to show his rehabilitation or the potential for rehabilitation.

In support of this circumstance, appellant filed separate, typewritten but unsigned documents entitled "Statement of Remorse" and "Statement of Rehabilitation" as required by section 1170, subdivision (d)(2). In these statements, appellant admitted he murdered the two victims, he left behind a "horrible scene," a first responder at his trial testified "this murder was the worst he had ever witnessed," there were "gruesome details" about the murders that he committed, and acknowledged "the level of fear and confusion [the victims] were experiencing in their final moments." Appellant admitted he previously refused to accept responsibility for what he had done, and "minimized, rationalized, justified, blamed, avoided, and denied culpability at every turn."

> "It wasn't until I had already spent some time in prison that I
> actively sought to understand myself. This isn't something that happened

---

[11] The rehabilitation eligibility circumstance in section 1170, subdivision (d)(2)(D) states: "The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."

over night, but over years of work and introspection. I began to see how I became a person capable of murder. . . . [¶] *It was in the year 2014 when I made the decision to not only understand myself but to also make a change.* With all the insight I've gained during my incarceration I knew exactly where real change was needed. I made the active choice to participate in self-help classes that were tailored to combating the character defects I've identified within myself." (Italics added.)

Appellant stated that since that time, he participated in classes in anger management, domestic violence, narcotics anonymous, insight, peer mentorship, motivation, education, and youth diversion. As a result of the guidance from the teachers and counselors, he developed a value system to rely on to make the right choices. "In no way am I saying that gaining this insight and working towards becoming the better version of myself has been easy," and there had been "pitfalls and missteps," but it was the "constant reminders of the harm" he caused the victims' family that kept him on the right track.

> "With the shame, guilt, and remorse I have for everything I've done came the realization that in order to accept full accountability for the damage my actions have caused I must destroy the person I once was. [¶] While I am no longer . . . the person who committed those heinous crimes, *I know that my journey is not nearly over.* Today I've dedicated my days to the service of others. I work to help other inmates find their own ways towards the life changing insights that I have acquired. Whether it be through self-help programs or education, I fulfill my rehabilitation cycle by being of service." (Italics added.)

Appellant also filed documents to support his statements that he had "engaged in many wide-ranging rehabilitative activities," including earning his GED and AA degree, learning cognitive behavior skills to deal with anger management, working as a tutor and inmate peer educator, and receiving laudatory reports from CDCR and his various programs. Appellant included plans to avoid relapses for situations involving anger management, substance abuse, and domestic violence; and numerous certificates and commendations for good behavior and his successful completion of programs and classes.

### *Request for certification to juvenile court*

Appellant's petition concluded that he satisfied the provisions of section 1170, subdivision (d)(1) and (2) for mandatory recall of his LWOP terms and remand was required. Instead of a resentencing hearing, appellant asserted that, since the judgment would no longer be final, the trial court should certify his case to juvenile court for further appropriate proceedings pursuant to Proposition 57.[12]

### **THE TRIAL COURT'S DENIAL OF THE PETITION**

On March 29, 2024, Judge Wolf, who did not preside over appellant's trial or his resentencing hearing, filed a lengthy order that denied his petition without a hearing or granting his motion for appointment of counsel.

In the order, the court found appellant was 16 years old when he "murdered an elderly couple . . . while they slept in their home," he was convicted of two counts of first degree murder with three special circumstances, and he was sentenced to two LWOP terms. That order extensively addressed the provisions of section 1170, subdivision (d), and found appellant satisfied some of the statutory requirements for recall: he was under 18 years old when he committed the murders; he was sentenced to two LWOP terms; he served the current petition on the Kern County District Attorney's Office, which

---

[12] Proposition 57 was passed in 2016, after appellant was convicted, and "prohibits prosecutors from charging juveniles with crimes directly in adult court. Instead, they must commence the action in juvenile court. If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct what we will call a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult. [Citation.]" (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303.)

As acknowledged by appellant, the trial court did not address this issue and it is not relevant to the instant appeal. Moreover, appellant did not raise this issue in his petition for review and it was not address by the California Supreme Court in its order that granted review and transferred with directions to vacate our prior nonpublished opinion.

prosecuted the case; and his petition included statements describing his remorse and work toward rehabilitation.[13]

However, the court denied appellant's petition and found he was ineligible for recall because he failed to satisfy three statutory requirements.

First, the trial court stated appellant filed his petition in 2024, but he had not been "incarcerated" for at least 15 years as required by section 1170, subdivision (d)(1)(A). "[Appellant] contends that he has been 'detained' or 'in custody' since November 24, 2008," when he was taken into custody for the murders, but he was not received by CDCR until October 8, 2010, after his conviction and sentence.

> "[T]his Court finds that this time of detention in jail is not to be included when calculating the time [he] has been 'incarcerated'. [¶] The Court views the requirement of having to been incarcerated as having been *under the supervision of the CDCR post-conviction without reference to the pre-conviction credits* if the inmate had been detained prior to the conclusion of the proceeding against him." (Italics added.)

The trial court concluded that calculation of the 15-year period did not include "pre-conviction time detained in jail," and appellant was ineligible for recall in 2024.

Second, the trial court found appellant's petition failed to prove by a preponderance of the evidence that he met one or more of the four circumstances stated in section 1170, subdivision (d)(2)(A)–(D). It held that appellant's statement in his petition, that he did not have any prior record before committing the murders, did not meet his burden to satisfy the circumstance in section 1170, subdivision (d)(2)(B).

> "[Appellant] provides *no evidence of such an assertion is true*. With no evidence in support [appellant] has failed to prove by a preponderance of the evidence that [appellant's] claim to have never been adjudicated of a

---

[13] "A reply to the petition, if any, shall be filed with the court within 60 days of the date on which the prosecuting agency was served with the petition unless a continuance is granted for good cause." (§ 1170, subd. (d)(4).) The People were served with appellant's petition but did not file a reply.

juvenile felony or other felony crimes with a significant potential for personal harm to victims." (Italics added.)

Third, the court rejected appellant's statement that he satisfied the rehabilitation circumstance stated in section 1170, subdivision (d)(2)(D):

"Although very laudable behavior is documented in this evidence, in the opinion of this Court, it fails to prove by a preponderance of the evidence that [appellant] has performed acts that tend to indicate rehabilitation or the potential for rehabilitation."

## DISCUSSION

### I. Section 1170, subdivision (d)

Appellant filed his petition based on the recall and resentencing provisions of section 1170, subdivision (d), enacted by Senate Bill No. 9 (2011–2012 Reg. Sess.) (Senate Bill No. 9), and effective January 1, 2013. (*In re Kirchner* (2017) 2 Cal.5th 1040, 1049; *People v. Gibson* (2016) 2 Cal.App.5th 315, 322–323.) "In *Graham v. Florida* (2010) 560 U.S. 48 . . . , our nation's high court held the Eighth Amendment prohibits LWOP sentences for juvenile offenders who committed non-homicide offenses. [Citation.] In response to *Graham*, the Legislature enacted section 1170[, subdivision ](d), creating a recall and resentencing procedure for certain juvenile offenders sentenced to LWOP terms. [Citation.]" (*People v. Sorto* (2024) 104 Cal.App.5th 435, 442.)

#### A. Eligibility for recall

Section 1170, subdivision (d) states in relevant part that "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A).)

"The defendant shall file the original petition with the sentencing court. A copy of the petition shall be served on the agency that prosecuted the case." (§ 1170, subd. (d)(2).) "The petition shall include the defendant's statement that the defendant was

22.

under 18 years of age at the time of the crime and was sentenced to [LWOP], the defendant's statement describing their remorse and work towards rehabilitation . . . ." (*Ibid*.)

The petition also must include "the defendant's statement that one of the following is true . . . ."  (§ 1170, subd. (d)(2).)

> "(A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.
>
> "(B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.
>
> "(C) The defendant committed the offense with at least one adult codefendant.
>
> "(D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."  (§ 1170, subd. (d)(2)(A)–(D).)

"If the court finds by a preponderance of the evidence that one or more of the statements specified in subparagraphs (A) to (D), inclusive, of paragraph (2) is true, the court *shall* recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. . . ."  (§ 1170, subd. (d)(5), italics added.)  Recall is mandatory if the court finds the defendant has met the statutory requirements.  (*In re Kirchner*, *supra*, 2 Cal.5th at p. 1050.)[14]

---

[14] Section 1170, subdivision (d)(1)(B) states that a defendant is ineligible for recall, even if he satisfies the other statutory factors, if it was pleaded or proved that the underlying offenses involved torture or a special class of victim.  In his petition, appellant

23.

**B. Filing an amended petition**

In determining a petitioner's eligibility for recall, "[i]f any of the information required in [section 1170, subdivision (d),] paragraph (2) is missing from the petition, or if proof of service on the prosecuting agency is not provided, the court shall return the petition to the defendant and advise the defendant that the matter cannot be considered without the missing information." (§ 1170, subd. (d)(3).)

**C. Recall and resentencing**

Section 1170, subdivision (d)(5) states that if the trial court finds a defendant has met his burden of proof for recall, the court shall recall his sentence and conduct a resentencing hearing. (*In re Kirchner*, *supra*, 2 Cal.5th at p. 1050.)

At the resentencing hearing, the court "may" consider several factors enumerated in section 1170, subdivision (d)(6) through (11) in exercising its discretion whether to sentence a defendant to a term less than LWOP.

Section 1170, subdivision (d)(6)(A)–(H) lists eight factors the court "*may consider when determining whether to resentence the defendant to a term of imprisonment with the possibility of parole*," and states the court is not limited to considering these factors. (§ 1170, subd. (d)(6), italics added.)

These eight resentencing factors include the same four factors listed as the recall eligibility circumstances in section 1170, subdivision (d)(2)(A)–(D): the defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law; the defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the defendant was sentenced to life without the possibility of parole; the defendant committed the offense with at least one adult codefendant; and the identical rehabilitation

---

stated such allegations were not pleaded or proved in his case, and the record supports this statement.

24.

circumstance, that the defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse.  (§ 1170, subd. (d)(6)(A)–(C), (F).)

The remaining four resentencing factors that the court "may" consider are: "[p]rior to the offense for which the defendant was sentenced to life without the possibility of parole, the defendant had insufficient adult support or supervision and had suffered from psychological or physical trauma or significant stress"; "[t]he defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors that did not constitute a defense but influenced the defendant's involvement in the offense"; "[t]he defendant has maintained family ties or connections with others through letter writing, calls, or visits or has eliminated contact with individuals outside of prison who are currently involved with crime"; and "[t]he defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor."  (§ 1170, subd. (d)(6)(D)–(E), (G)–(H).)

Subdivision (d)(7) of section 1170 states the trial court "*shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.  The discretion of the court shall be exercised in consideration of the criteria in paragraph (6)* [of section 1170, subdivision (d)].  Victims, or victim family members if the victim is deceased, shall be notified of the resentencing hearing and shall retain their rights to participate in the hearing."  (*Ibid.*, italics added.)

Section 1170, subdivision (d)(8) states that "[n]otwithstanding paragraph (7), [of section 1170, subdivision (d),] the court *may* also resentence the defendant to a term that is less than the initial sentence if any of the following were a contributing factor in the commission of the alleged offense" (italics added), and identifies three factors:  (1) "[t]he

25.

person experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence"; (2) "[t]he person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense"; and (3) "[p]rior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking" (§ 1170, subd. (d)(8)(A)–(C)).[15] "Paragraph (8) [of section 1170, subdivision (d)] does not prohibit the court from resentencing the defendant to a term that is less than the initial sentence, even if none of the circumstances listed in paragraph (8) are present." (§ 1170, subd. (d)(9).)

In addition to the factors in section 1170, subdivision (d)(6), "the court *may* consider any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria." (§ 1170, subd. (d)(11), italics added; see *In re Kirchner*, *supra*, 2 Cal.5th at p. 1050.)

At the resentencing hearing, the court has discretion to reimpose an LWOP term, after which "the defendant may submit another petition for recall and resentencing to the sentencing court when the defendant has been committed to the custody of the department for at least 20 years." (§ 1170, subd. (d)(10).) Upon filing the subsequent petition, if the defendant's sentence is not recalled or the court again imposes an LWOP term at a resentencing hearing, "the defendant may file another petition after having served 24 years." (*Ibid*.) "The final petition may be submitted, and the response to that petition shall be determined, during the 25th year of the defendant's sentence." (*Ibid*.)

On appeal, we review statutory interpretations de novo. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) We review the trial court's factual findings to determine whether

---

[15] Section 1016.7 is inapplicable to this case because it addresses factors the prosecutor shall consider in plea negotiations. (*Id*., subds. (a), (b).)

they are supported by substantial evidence, and do not reweigh or reinterpret the evidence. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)

## II.     Incarcerated for 15 years

Section 1170, subdivision (d)(1)(A) states that a defendant is eligible for recall and resentencing if he or she "has been incarcerated for at least 15 years" at the time the petition is filed, but does not define the term "incarcerated." (*People v. Ruiz* (2024) 104 Cal.App.5th 1027, 1031 (*Ruiz*).)

In his petition, appellant stated he satisfied this preliminary eligibility requirement for recall because he had been in custody since November 24, 2008, and he had been incarcerated for 15 years when he filed his petition.

The trial court held appellant had not been "incarcerated" for at least 15 years within the meaning of section 1170, subdivision (d)(1)(A) because he had not been "under the supervision of the CDCR post-conviction without reference to the pre-conviction credits," and preconviction detention could not be included in calculating the 15-year period.

On appeal, appellant contends, and the People agree, the trial court erroneously interpreted section 1170, subdivision (d)(1)(A) to limit the calculation of the 15-year period to postjudgment incarceration in CDCR.

### A.  *Ruiz*

In *Ruiz*, the trial court held calculation of the 15-year period did not include prejudgment detention. The trial court concluded the defendant was ineligible for recall, even though he had been held in preconviction detention since 2008, because he was sentenced to CDCR in 2010, he filed his petition in 2023, and he could not file a petition until at least 2025. (*Ruiz*, *supra*, 104 Cal.App.5th at pp. 1029–1031.)

On appeal, *Ruiz* held that " '[a]bsent "a specific statutory definition of [that term,] we may 'look to [its] plain meaning . . . as understood by the ordinary person, which would typically be a dictionary definition.' " ' [Citation.]" (*Ruiz*, *supra*, 104

Cal.App.5th at p. 1031.)  The Court of Appeal reasoned that the "statute's plain meaning"
was "clear" and rejected the trial court's interpretation.  (*Id*. at p. 1032.)  It explained,
"the Legislature did not use the word 'sentenced' in section 1170, subdivision (d)(1)(A).
Instead, it used the word 'incarcerated.' " (*Ibid*.)  "Based on the plain meaning of
'incarcerated,' [the defendant's] period of incarceration for purposes of a section 1170,
subdivision (d)(1)(A), began to run on January 29, 2008.  On that date, [the defendant]
was placed in jail, i.e., incarcerated, for the relevant charges and has remained in jail
since then.  By the time he was formally sentenced in August 2010, he had already been
incarcerated for over two-and-a-half years." (*Ibid*.)  *Ruiz* explained, "[p]rior to January 1,
2017, the statute allowed defendants to petition for resentencing when they '*ha*[*d*] *served
at least 15 years of* [*their*] *sentence*.' [Citations.]  However, effective January 1, 2017,
this language was changed by Senate Bill No. 1084 (2015–2016 Reg. Sess.) (Senate Bill
[No.] 1084) so a defendant could petition for resentencing after being 'incarcerated for at
least 15 years.'  A legislative report of Senate Bill [No.] 1084 explains this revision was
intended to 'clarif[y] language that has caused some confusion in the courts in the
following ways:  [¶]  "Clarif[y] that the person convicted for a crime committed while
under the age of 18 and sentenced to LWOP can submit a petition after he or she *has
been incarcerated* at least 15 years." ' [Citation.]" (*Ibid*., original italics.)

### B. Analysis

*Ruiz* was decided nearly six months after the trial court's ruling on appellant's
petition.  On appeal, both parties agree with *Ruiz*'s definition of "incarcerated" to include
preconviction detention.

We agree as well.  Appellant met this eligibility requirement for recall because he
had been in custody since November 24, 2008, and he had been "incarcerated" for at least

15 years when he filed the petition on or about January 3, 2024, within the meaning of section 1170, subdivision (d)(1)(A).[16]

### III. Evidence before the trial court as to whether appellant committed prior felony offenses

As explained in part I., *ante*, after meeting the initial eligibility requirements stated in section 1170, subdivision (d)(1) and (2), appellant had the burden to prove by a preponderance of the evidence one of the circumstances enumerated in section 1170, subdivision (d)(2)(A)–(D), and if he met his burden, the trial court would have been required to recall his LWOP terms.  (§ 1170, subd. (d)(2), (5).)

In his petition, appellant stated he met the eligibility circumstance defined by section 1170, subdivision (d)(2)(B), that states:  "The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall."  In this section, we address the evidence that was before the trial court about this circumstance when it denied appellant's petition.

---

[16] Appellant prepared the petition in propria persona, signed and dated it on December 30, 2023, and the proof of service on the trial court and district attorney's office was also signed and dated December 30, 2023.  The first page of the petition has a generic date-stamp of January 3, 2024, but the stamp does not indicate whether it was received or filed by the trial court on that date.  The trial court's order that denied appellant's petition stated the petition was filed on January 3, 2024, and both parties on appeal also state it was filed on January 3, 2024.

Even if appellant's petition had been deemed filed on December 30, 2023, pursuant to the prison-delivery rule, he still satisfied the incarceration requirement because it would have been filed 15 years after he was taken into custody on November 24, 2008.  (See, e.g., *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 110, fn. omitted; *id*. at pp. 123–124, fns. omitted ["The prison-delivery rule . . . provides that a self-represented prisoner's notice of appeal in a criminal case is deemed timely filed if, within the relevant period set forth in the California Rules of Court, the notice is delivered to prison authorities pursuant to the procedures established for prisoner mail," and the rule has been applied in regards to "petitions for postconviction relief, motions, and other filings."].)

## A. The record before the trial court

As previously stated, appellant filed his petition in propria persona. In his handwritten, unsigned, "Statement of Qualifying Factors," appellant "affirm[ed]" that he had never been convicted of any felony assault crimes prior to committing the LWOP offenses. Appellant did not file a sworn declaration or official records to support his statement that he did not have a prior record.

## B. The probation report

The probation report has a file stamp of October 1, 2010, and was prepared after appellant's convictions for murder and prior to his first sentencing hearing. It stated that appellant "has no prior record of criminal conduct" and cited a review of certain federal and state databases, but did not include any supporting documents. There are notations in the report indicating it was reviewed by the trial court at appellant's resentencing hearing in 2013.

The probation report was filed in this court as part of the record of this appeal. It was not filed in support of appellant's petition before the trial court, and appellant appears to concede the probation report was not before the trial court when it considered his petition.

## C. The parties' initial appellate arguments

In his initial appellate briefing, appellant argued section 1170, subdivision (d)(2) only requires the petition to contain his "statement" that one of the four enumerated circumstances is true, his petition contained the required "statement" that he did not have a prior record, he met this burden, and the matter must be remanded for recall and resentencing. In the conclusion to his opening brief, appellant stated:

> "[T]he order of denial should be reversed and remanded with instructions to proceed under section 1170, subdivisions (5) through (9) and (11) [*sic*]. At the very least, and in the event this court deems the 'information' in the

30.

petition to have been insufficient, the lower court should be instructed to follow the procedure set forth in section 1170(d)(3)."[17]

The People asserted appellant's bare "statement" about his record carried "no evidentiary value" because it was not supported by documentary evidence or a sworn declaration. The People acknowledged the probation report stated appellant did not have a prior record and appellant did not file that report to support his petition, and concede remand may be appropriate for appellant to file an amended petition with the appropriate supporting evidence. The People also acknowledged the statements in the judicially noticed evidence, that he did not have a prior record, but argued such evidence was not before the trial court and cannot be relied on to file an amended petition.

**D. Analysis**

The trial court found that while appellant stated he did not have a prior record, he provided "no evidence of such an assertion is true" and failed to prove his lack of a prior record by a preponderance of the evidence.

The trial court's ruling was correct at the time the court addressed his petition. Appellant failed to meet his burden of proving by a preponderance of the evidence the circumstance defined in section 1170, subdivision (d)(2)(B). Appellant did not file the probation report in support of his petition and, while the report was filed as part of the instant appellate record, it is not clear whether the probation report was before the trial court when it considered appellant's petition.

Judge Wolf, who denied appellant's petition, did not preside over appellant's trial or the resentencing hearing, but his order stated facts about the murders beyond the nature of the charges and special circumstances, that two elderly people were killed in

---

[17] As explained in part I., *ante*, section 1170, subdivision (d)(3) states that "[i]f any of the information required in [section 1170, subdivision (d),] paragraph (2) is missing from the petition, or if proof of service on the prosecuting agency is not provided, the court shall return the petition to the defendant and advise the defendant that the matter cannot be considered without the missing information." (§ 1170, subd. (d)(3).)

their sleep, thus indicating some familiarity with the case. (*Palafox*, *supra*, 231 Cal.App.4th at p. 73.) The record herein does not indicate whether the court stated these facts after reviewing the probation report, the nonpublished opinion in *Hoffman*, the published opinion in *Palafox*, or some other documents about this case.[18] In any event, the record that was before the trial court did not support appellant's claim that he did not have a prior record before he committed the life offense.

This conclusion does not end the analysis in this case.

## IV. This court's judicial notice order

As noted above, this court filed an order during the initial briefing in this case, and advised the parties it was considering whether to take judicial notice of the record and nonpublished opinion in appellant's direct appeal, *Hoffman*, *supra*, F061127, and the record in *Palafox*, *supra*, 231 Cal.App.4th 68 (F067413), that affirmed the trial court's resentencing order on remand.

The People have not objected to judicial notice. Appellant raises several objections, however, and asserts that since this court did not identify which portions of the record and nonpublished opinion in *Hoffman*, *supra*, F061127, were going to be within the judicial notice order, he has a general objection to taking judicial notice of any matters in the record and nonpublished opinion that are not relevant to this appeal and/or constitute hearsay.

Appellant raises specific objections to the following matters in the record in *Hoffman*, *supra*, F061127: all pretrial motions and hearings, the record for the

---

[18] Even assuming the probation report was before the trial court, the statement about his prior record may have constituted hearsay in the absence of supporting official documents. (See, e.g., *People v. Otto* (2001) 26 Cal.4th 200, 212–213; *People v. Del Rio* (2023) 94 Cal.App.5th 47, 56–57.) As will be further discussed below, "[c]ourts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof. [Citation.]" (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

evidentiary portions of the joint jury trial that were only heard by codefendant Hoffman's jury, the jury instructions, and the parties' arguments. As to the nonpublished opinion in *Hoffman*, *supra*, F061127, appellant only objects to the section that summarized the evidence heard only by Hoffman's jury "as representing 'hearsay' and being 'reasonably subject to dispute.' "

Appellant does not object to taking judicial notice of the record in *Hoffman*, *supra*, F061127, consisting of the trial transcript of evidence heard by both juries, the evidence heard only by his separate jury, the verdicts, abstract of judgment, and the transcript of appellant's sentencing hearing. Appellant does not object to this court taking judicial notice of its own records in *Palafox*, *supra*, F067413, including the records that support the trial court's finding at the resentencing hearing that he did not have a prior record.

## A. Judicial notice

"A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute. [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113; see *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort*, *supra*, 91 Cal.App.4th at p. 882.) Moreover, judicial notice should be taken only of those matters which are relevant to the issue at hand. (*Gbur v. Cohen* (1979) 93 Cal.App.3d 296, 301; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1; *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1262, 1276; *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.)

" 'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.' [Citation.] The court may in its discretion take judicial notice of any court record in the United States. [Citation.] This includes any orders, findings of facts and conclusions of law, and judgments within court records. [Citations.] However, while courts are free to take

33.

judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.  [Citation.]  *Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records* because such matters are reasonably subject to dispute and therefore require formal proof.  [Citation.]"  (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort*, *supra*, 91 Cal.App.4th at p. 882, first italics in original, second italics added; see *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382, disapproved on other grounds by *Vo v. Technology Credit Union* (2025) 108 Cal.App.5th 632, 648.)

### B. Analysis

Appellate courts routinely take judicial notice of the records of their own cases under Evidence Code sections 452, subdivision (d) and 459.  (See, e.g., *Estate of Kempton* (2023) 91 Cal.App.5th 189, 193, fn. 2 [taking judicial notice of prior nonpublished opinion in the same case on court's own motion]; *Rel v. Pacific Bell Mobile Services* (2019) 33 Cal.App.5th 882, 886 ["On our own motion, we take judicial notice of [two prior opinions in same case] as well as the underlying appellate records.  (See Evid. Code, § 452, subd. (d).)"]; *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 769, fn. 7 [taking judicial notice of related appeal in writ proceeding]; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1 ["We take judicial notice of the record on appeal filed in this court" in the defendant's prior appeal, "as well as of this court's unpublished opinion in that matter.  (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)"]; see also Cal. Rules of Court, rule 8.1115(b) ["An unpublished opinion may be cited or relied on: [¶] . . . [¶]  (2) When the opinion is relevant to a criminal . . . action because it states reasons for a decision affecting the same defendant or respondent in another such action."].)

For purposes of this appeal, we take judicial notice of the entirety of this court's own records and our nonpublished opinion in appellant's direct appeal from the judgment

in *Hoffman*, *supra*, F061127, and this court's own records in his appeal from the resentencing judgment in *Palafox*, *supra*, F067413.

As for the trial evidence that was heard only by Hoffman's separate jury, appellant's current argument is that such evidence is not relevant to the instant appeal. This argument is inconsistent with his judicial notice requests when this court vacated his original LWOP terms and remanded the matter for another sentencing hearing in light of *Miller*. (*Palafox*, *supra*, 231 Cal.App.4th at p. 75, *Hoffman*, *supra*, F061127.) At the resentencing hearing on remand, the trial court granted appellant's request to take judicial notice of the trial evidence, including "the evidence presented in support of the motions (including statements made by [appellant] and Hoffman), and the rulings, that resulted in two juries hearing the case; and [appellant]'s submissions and arguments at the original sentencing hearing." (*Palafox*, *supra*, 231 Cal.App.4th at p. 75, fn. 4.) On appeal from the reimposition of the LWOP terms, this court granted appellant's request to take judicial notice of the entirety of the trial record and nonpublished opinion in *Hoffman*, *supra*, F061127; appellant did not request to exclude any part of the trial record or the evidence heard only by Hoffman's jury, and this evidence was summarized in the published opinion in *Palafox*. (*Palafox*, *supra*, 231 Cal.App.4th at p. 73, fn. 1.)

For purposes of this appeal, we need not rely on inadmissible hearsay or matters that are not relevant to the issues raised herein, and we decline to rely on the trial record of the inculpatory evidence heard only by Hoffman's separate jury, as summarized in the *Hoffman* and *Palafox* records and opinions.

We note, however, that similar evidence was already before the trial court, and is also before this court, as part of the instant petition and independent of the records in *Hoffman* and *Palafox*. When the trial court denied appellant's petition for recall, it was clearly aware of the nature and circumstances of the crimes in this case because it stated appellant "murdered an elderly couple . . . while they slept in their home." The trial court also reviewed the documents that appellant filed in support of his petition, including the

"Statement of Remorse" where he admitted, "I murdered both Joseph and Dorothy," he did not care "about the life I was taking or the lifetime of harm and trauma my callous acts would cause to their family," and "Joseph and Dorothy did not deserve for me *to inflict my cowardly act of murder upon them. . . .* Imagining the level of fear and confusion they were experiencing in their final moments has left me changed in a way that the prison system alone could have never hoped to accomplish." (Italics added.)

Also in his "Statement of Remorse," appellant apologized to first responders who were at the scene of the murders because "[o]ne thing said during a first responder's testimony in my trial was that in all the years he had worked in his field, *this murder was the worst he had ever witnessed*. This is a horrible image for anyone to have to see let alone carry with them for life. All these years later, the knowledge that *I'm responsible for such a horrible scene* still turns my stomach, filling me with disgust and shame." He acknowledged the pain he caused to the jury, who heard the "horrible details" of "the crimes I committed," to the prosecutor and judge, who had "to listen and learn all *the gruesome details of my crime against Joseph and Dorothy Parrott*," and to his parents and family, who "heard of the terrible crimes I committed." (Italics added.) In his separate "Statement of Rehabilitation," appellant again admitted, "I murdered both Joseph and Dorothy Parrott," he previously refused to accept responsibility and denied culpability "at every turn," and he could not "stand the fact" that he was such a "coward" and "monster."

While we decline to rely on the evidence heard by Hoffman's separate jury for purposes of this appeal, the record before the trial court contained appellant's admissions that he killed both victims, the murders involved "gruesome details," and he left behind a "horrible scene."

We thus overrule appellant's objections and take judicial notice of the entirety of the records before this court in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, and the nonpublished opinion in *Hoffman*.

36.

**V.** *Palafox*, **the judicially noticed records, and whether appellant committed a prior felony offense**

Also in our briefing order, we asked the parties to address the possible impact of statements in *Palafox*, *supra*, 231 Cal.App.4th at page 80, and the records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, that appellant had no prior record of criminal conduct prior to committing the murders, as relevant to the eligibility circumstance defined in section 1170, subdivision (d)(2)(B), and whether remand was required for appellant to file an amended petition under section 1170, subdivision (d)(3).

We review the relevant records and the parties' arguments.

**A.  The judicially noticed records and *Palafox***

The record in *Hoffman*, *supra*, F061127, appellant's direct appeal from the judgment, shows that on September 22, 2010, the trial court conducted appellant's first sentencing hearing and made lengthy findings, including that appellant "has no prior record of criminal conduct," and sentenced him to two consecutive LWOP terms.

The record in *Palafox*, *supra*, F067413, appellant's appeal from the resentencing hearing, shows that on May 24, 2013, the trial court made extensive findings at the resentencing hearing on remand including that for appellant, there was a "lack of a previous record of criminal conduct." The court again imposed two consecutive LWOP terms.

In *Palafox*, *supra*, 231 Cal.App.4th at page 80, this court affirmed the trial court's decision to again impose two LWOP sentences, and stated that at the resentencing hearing on remand, "the [trial] court noted [appellant] had no previous criminal history."

**B.  The parties' supplemental briefs**

In response to our briefing order, appellant argued, for the first time, that the records in *Hoffman*, *supra*, F061127, and *Palafox*, *supra*, F067413, supported the statements in his petition and the probation report, that he did not have a prior juvenile or adult record, and the trial court's denial of his petition should be reversed. Appellant

stated these records "support the conclusion that 'the matter should be remanded for further proceedings pursuant to section 1170, subdivision (d)(3).' "

The People argued appellant still had the burden to prove by a preponderance of the evidence that he did not have a prior record and was eligible for recall under section 1170, subdivision (d)(2)(B), and there was no statutory provision for a court to "research, seek, or obtain information that is not part of the record before it." The People asserted remand could not be based on the judicially noticed records because "[t]here is no indication" the statements contained in those records were part of the record before the trial court, and they cannot be the subject of an amended petition filed under section 1170, subdivision (d)(3) since they were not "missing" within the meaning of that subdivision.

### C. Analysis

The People are correct that the trial court did not have a duty to independently research appellant's petition. However, we decline to ignore the published opinion in appellant's appeal from the resentencing judgment, where the trial court stated he "had no previous criminal history." (*Palafox*, *supra*, 291 Cal.App.4th at p. 80.)[19]

At the very least, the statement in *Palafox*, *supra*, 231 Cal.App.4th at page 80, indicates appellant did not have a prior record before he committed the murders, and remand would have been appropriate for appellant to file an amended petition with supporting evidence that was missing from his initial petition, pursuant to section 1170, subdivision (d)(3).

While the judicially noticed records appear to support the "no prior felony offense" eligibility circumstance, it is well settled that "[a]n ' "essential distinction" '

---

[19] Appellant does not object to this court's consideration of the "observation" in *Palafox*, *supra*, 231 Cal.App.4th at page 80, that he did not have a criminal history, and asserts it "presents another basis on which the lower court could have avoided its error, had it chosen to look." Appellant filed his petition in propria persona and, as the People correctly note, the trial court was not obliged to conduct legal research.

between trial courts and appellate courts is that' " it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . ." ' [Citation.] Appellate courts do not make factual findings; we review ' "the correctness of a judgment [or order] as of the time of its rendition." ' [Citation.]" (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892.)

In his postremand supplemental briefing, appellant argues this court should make the appropriate factual finding based on the judicially noticed records and remand the matter for recall and resentencing.

"It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made*. [Citation.]' [Citations.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 149.)

We decline to make factual findings from records that were never before the trial court.

## VI. The rehabilitation eligibility circumstance

In his petition, appellant stated he satisfied a second eligibility circumstance for recall—that he had "performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative,

educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse," as defined in section 1170, subdivision (d)(2)(D). In support of his claim, appellant filed rehabilitation and remorse statements, and documents and certificates about programs and classes he had taken in prison. The trial court found appellant's supporting documents failed to prove the rehabilitation eligibility circumstance by a preponderance of the evidence.

On appeal, appellant renews his argument that his petition and supporting documents met his burden to prove the rehabilitation circumstance as a separate factor to establish his eligibility for recall under section 1170, subdivision (d)(2)(D).

**A. The trial court's finding**

In denying his petition, the trial court stated appellant had been convicted of two counts of first degree murder with three special circumstances, and sentenced to two LWOP terms, because he "murdered an elderly couple . . . while they slept in their home." The court acknowledged appellant's supporting documents about rehabilitation, but found he failed to satisfy the rehabilitation eligibility circumstance under section 1170, subdivision (d)(2)(D):

> "In support of this assertion, [appellant] includes a number of program completion certificates and notes of praise for [appellant] gleaned from his prison central file. Although very laudable behavior is documented in this evidence, in the opinion of this Court, it fails to prove by a preponderance of the evidence that [appellant] has performed acts that tend to indicate rehabilitation or the potential for rehabilitation."

**B. Analysis**

The trial court's finding that appellant failed to prove the rehabilitation factor is supported by the evidence that was before the court. While it is not clear whether the trial court reviewed the probation report or the two prior appellate opinions, the court was clearly aware of the circumstances of appellant's crimes. As explained in part IV., *ante*,

40.

in his supporting statements of remorse and rehabilitation, appellant admitted murdering the two victims, and apologized to first responders, the jury, and his own family, for leaving behind a gruesome and horrible murder scene.

Appellant committed the double murders in August 2008, and he was taken into custody in November 2008. He was convicted and sentenced to two consecutive LWOP terms in 2010. The recall and resentencing provisions of section 1170, subdivision (d) went into effect on January 1, 2013. In or about January 2024, appellant filed his petition for recall and resentencing, shortly after he met section 1170, subdivision (d)'s 15-year incarceration requirement. In his petition's supporting statements, appellant admitted he did not decide to "make a change" and "understand myself" until 2014, when he began taking classes and engaging in programming. As noted by the People, the earliest date that appears in documents that appellant filed in support of his petition for recall and resentencing regarding any form of rehabilitation is a high school equivalency certificate dated March 18, 2014.

Appellant argues his showing as to rehabilitation and remorse "was more than sufficient." While the defendant presented numerous certificates and documents to support his claims about rehabilitation and remorse, "the majority of [his] efforts at rehabilitation, as evidenced by the exhibits submitted in support of his petition, postdate the enactment of Senate Bill [No.] 9 [and section 1170, subdivision (d)]. A trier of fact could reasonably conclude that [the] defendant's efforts were not reflective of genuine remorse or rehabilitation." (*People v. Gibson*, *supra*, 2 Cal.App.5th at pp. 328–329.) The record shows appellant did not engage in any rehabilitative efforts until after section 1170, subdivision (d) went into effect, which presented him with the possibility that he could obtain recall and resentencing of his two consecutive LWOP terms for the double murders. He admitted he was still on his "journey," even though he filed his petition as soon as he met the 15-year eligibility requirement. The trial court could reasonably conclude that appellant's delayed initiation of rehabilitative efforts, engaged in for a

41.

relatively short period of time, was insufficient compared with the seriousness of his crimes.

The record that was before the trial court supports its conclusion that appellant's rehabilitation efforts of less than 10 years, while serving two consecutive LWOP terms for his admitted commission of two horrific murders, was insufficient to constitute sufficient rehabilitation.[20]

## VII.   This court's prior opinion

In our prior nonpublished opinion in this appeal, we found the trial court's interpretation of the 15-year incarceration requirement for recall was erroneous.  We also found that appellant could have filed an amended petition under section 1170, subdivision (d)(3), supported by the judicially noticed records, to address whether he did not have a prior record.  However, we declined to order remand, and determined the trial court's ultimate denial of appellant's petition and failure to conduct a resentencing hearing was harmless.

---

[20] Appellant argues that on remand, he could call Mason, the licensed clinical social worker, and introduce her report as summarized in *Palafox, supra*, 231 Cal.App.4th at pages 75 through 78, or call another expert to support his arguments about his rehabilitation efforts.

Mason's report was introduced at appellant's 2013 resentencing hearing on the *Miller* issue but, as noted, it was not before the court when it denied his section 1170, subdivision (d) petition for recall and resentencing.  As summarized in *Palafox, supra*, 231 Cal.App.4th at page 77, the report stated that appellant "felt sorry for the Parrotts' deaths, and wished things were different.  He knew he did wrong and felt he belonged in prison.  He wanted to be a better person."

According to Mason's 2013 report, appellant stated he knew he did wrong and wanted to be a better person.  This statement appears to conflict with the supporting evidence appellant filed in 2024 with his petition for recall and resentencing, that "*[i]t was in the year 2014 when I made the decision to not only understand myself but to also make a change*.  With all the insight I've gained during my incarceration I knew exactly where real change was needed.  I made the active choice to participate in self-help classes that were tailored to combating the character defects I've identified within myself." (Italics added.)

In doing so, we relied on the trial court's additional finding, that appellant failed to meet his burden to prove the rehabilitation circumstance for recall eligibility as stated in section 1170, subdivision (d)(2)(D). Section 1170, subdivision (d)(6)(F) states that after recall, the trial court may consider the identical rehabilitation circumstance when deciding whether to exercise its discretion to impose a lesser sentence at a resentencing hearing. We concluded the trial court's finding that appellant failed to prove the rehabilitation factor is supported by the evidence, and established that if the court had ordered recall, it would have relied on this same factor to exercise its discretion not to resentence appellant to a lesser term.

## VIII. *Salazar* and *Lynch*

The California Supreme Court granted appellant's petition for review as follows: "The petition for review is granted. The matter is transferred to the Court of Appeal, Fifth Appellate District, with directions to vacate its decision and reconsider the cause in light of *People v. Salazar* (2023) 15 Ca1.5th 416 and *People v. Lynch* (2024) 16 Ca1.5th 730. (Cal. Rules of Court, rule 8.528(d).)" (*People v. Palafox*, *supra*, S292909, Supreme Ct. Mins., Nov. 25, 2025.)

We vacated our prior nonpublished opinion and ordered the parties to file supplemental briefs and address the application of *Salazar* and *Lynch* to this case.

We review the basis for the decisions in *Salazar* and *Lynch*, the parties' supplemental briefs, and remand the matter, as will be explained in part IX., *post*.

### A. *Gutierrez*

We begin with *People v. Gutierrez* (2014) 58 Cal.4th 1354, which held that " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate

43.

remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*Id*. at p. 1391.)

### B. *Salazar*

In *Salazar*, the defendant was convicted of false imprisonment by violence or menace and infliction of corporal injury on a person with whom he had a current or former dating relationship, and admitted one prior strike conviction. (*Salazar*, *supra*, 15 Cal.5th at pp. 420–421.) At the sentencing hearing, the defense introduced a sentencing memorandum about his family dysfunction, history of alcohol and drug abuse, prior diagnosis of mental health problems, and treatment in a facility. The prosecution's sentencing statement addressed his lengthy prior record of felony and misdemeanor convictions, 11 prior commitments to state prison, and the additional charges pending against him. (*Id*. at pp. 421–422.)

The defendant was sentenced to the midterm of three years for inflicting corporal injury, doubled to six years because of his prior strike conviction, plus a consecutive eight months for false imprisonment (one-third the middle term), doubled because of the prior strike conviction, for a total prison sentence of seven years four months. (*Salazar*, *supra*, 15 Cal.5th at p. 423.)

Effective January 1, 2022, and while the defendant's appeal was pending, "Senate Bill [No.] 567 [(2021–2022 Reg. Sess.)] amended section 1170 to provide that 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if,' among other things, the defendant 'has experienced psychological, physical, or childhood trauma,' and this trauma 'was a contributing factor in the commission of the offense.' " (*Salazar*, *supra*, 15 Cal.5th at p. 423.)

*Salazar* held these amendments were retroactive to defendant's case since it was not yet final, and remand for resentencing under the amended statute was required. (*Salazar*, *supra*, 15 Cal.5th at p. 419.) "Here, the facts that the offenses were violent and occurred over an extended period and that the sentencing court noted [the defendant] had an extensive criminal history does not suffice to provide a clear indication the court would have departed from this presumptive lower term in the 'interests of justice.' [Citation.]" (*Salazar*, *supra*, 15 Cal.5th at p. 427.) "This is simply not the kind of record upon which we can conclude that there is *a clear indication* that the sentencing court would have exercised its discretion under the current section 1170 to impose the same middle term as before. Here, the [trial] court emphasized [at the sentencing hearing] how drug use affected [the defendant's] criminal history, underscored the impact that [the defendant's] parents' deaths had on him, noted how respectful [the defendant] had been in court, and expressed hope that he would have an opportunity for rehabilitation and become the best version of himself. On this record, we cannot say that simply because the sentencing court made a cursory reference to the extended duration of the crime and mentioned [the defendant's] long criminal history that this provides a clear indication that the court would have concluded that 'the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' [Citation.]" (*Id.* at pp. 427–428, italics added.)

*Salazar* relied on *Gutierrez* and concluded: "In sum, in *Gutierrez*, we established that when a court has not exercised its informed discretion, remand is the default 'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' [Citation.] We emphasize that principle again: unless there is a clear indication from the sentencing court that it would be idle to do so, remand for resentencing is required. When the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the

45.

sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing. Mere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers. [Citation.]" (*Salazar*, *supra*, 15 Cal.5th at pp. 431–432.) In remanding the matter, *Salazar* declined to express a view as to how the court should exercise its discretion. (*Id*. at p. 432.)

## C. *Lynch*

In *Lynch*, the defendant was convicted of simple assault and three counts of domestic violence resulting in a traumatic condition, and he had one prior strike conviction and one prior conviction for an offense involving domestic violence. (*Lynch*, *supra*, 16 Cal.5th at p. 744.) At the sentencing hearing, the trial court found eight circumstances in aggravation and none in mitigation, emphasized that the defendant committed repeated acts of violence, his use of multiple weapons in this case involved great violence, cruelty, viciousness, and callousness, his criminal record demonstrated a serious danger to society, and he was on parole when he committed the current crimes. The court sentenced the defendant to an aggregate term of 15 years four months in prison based on an upper term and consecutive terms. (*Id*. at pp. 744–745, 777.)

On appeal, *Lynch* addressed the impact on the defendant's case of Senate Bill No. 567 (2021–2022 Reg. Sess.), which went into effect while his appeal was pending. *Lynch* focused on the amendment to section 1170, subdivision (b) that prohibited "imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' [Citations.] Allegations of prior convictions may be tried

by the court alone and proven by certified records of conviction. [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at p. 742; see *id*. at p. 745.)

Lynch held the amended statute was retroactive to cases not yet final. (*Lynch*, *supra*, 16 Cal.5th at p. 749.) *Lynch* reaffirmed remand is required under *Gutierrez* and *Salazar* when the record does not clearly indicate "how the court would have exercised its newfound discretion." (*Id*. at p. 776.)

Lynch held the trial court's statements at the sentencing hearing showed it acted within its discretion under the law at that time. "But it does not necessarily speak to how the court would have exercised its discretion under the weight of the presumptive middle term maximum sentence that currently exist*s*. [Citation.] *Notably, the court did not make the kind of definitive statements that we have found to clearly indicate it would not impose a lesser sentence under any circumstances.* [Citations.] Rather, this record comes within our general admonishment in *Salazar* that '[m]ere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, *is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers*.' [Citation.] In other words, it would be 'speculative' [citation] to conclude the trial court's finding that an upper term sentence was 'appropriate' in the exercise of its broad discretion, clearly indicates that it would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence. The reasoning in *Gutierrez* and *Salazar* also requires reversal of the sentence and remand here." (*Lynch*, *supra*, 16 Cal.5th at p. 777, italics added.)

Lynch stated that on remand, the trial court retained discretion to impose an upper term sentence if it concluded that one or more "properly proved circumstances" justified such a sentence and, if it could not so conclude, "it may impose no more than a middle

term for each of the counts on which [the defendant] stands convicted." (*Lynch*, *supra*, 16 Cal.5th at p. 778; see *id*. at pp. 777–778.)

### D. Analysis

We agree with the parties that remand of the instant case is required under the "clearly indicates" standard of *Lynch* and *Salazar*. The trial court found appellant was ineligible for recall and resentencing under section 1170, subdivision (d), but that ruling was based on its erroneous finding that appellant had not served 15 years in custody. While the record before the trial court did not support appellant's bare assertion in his petition that he did not have a prior record, the statement in *Palafox*, that he did not have a prior record, cannot be ignored.

As for the court's finding that appellant failed to meet the rehabilitation circumstance, we agree with appellant that circumstance is only one factor that the court may consider after recall and when conducting the resentencing hearing. As explained in part I., *ante*, once the LWOP sentence is recalled, the court "may" consider several circumstances stated in section 1170, subdivision (d)(6)–(11), in exercising its discretion to decide whether to sentence a defendant to a term less than LWOP. In addition to the enumerated factors, "the court may consider any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria." (§ 1170, subd. (d)(11); accord, *In re Kirchner*, *supra*, 2 Cal.5th at p. 1050.) The trial court also has discretion to resentence appellant to life without the possibility of parole at the hearing. (§ 1170, subd. (d)(10).)

As in *Lynch* and *Salazar*, the trial court's negative finding on the rehabilitation eligibility circumstance, even though supported by the evidence before it, did not constitute "the kind of definitive statements that we have found to clearly indicate it would not impose a lesser sentence under any circumstances" and it would be " 'speculative' " to conclude the court's finding on one eligibility factor clearly indicated

what it would have done at a resentencing hearing. (*Lynch*, *supra*, 16 Cal.5th at p. 777.) The court's negative finding on that factor was " 'not sufficient to provide a clear indication' " of what it might have done if it had been fully aware of the scope of its discretionary powers pursuant to the additional resentencing circumstances set forth in section 1170, subdivision (d)(6)–(9) and (11) if it had conducted a resentencing hearing. (*Lynch*, at p. 777.)

## IX. Remand and appointment of counsel

While the parties agree that remand is required under *Lynch* and *Salazar*, they disagree as to the nature of that remand. In postremand briefing, the People argue appellant should be directed to file an amended petition under section 1170, subdivision (d)(3) to prove his eligibility for resentencing by a preponderance of the evidence, based on the judicially noticed records that were not previously before the trial court, in order for the court to make the eligibility finding and conduct further proceedings. Appellant asserts this court should rely on *Palafox* and the judicially noticed records, make the factual finding that he is eligible for recall and resentencing, and order remand for the trial court to appoint counsel and conduct the section 1170, subdivision (d)(6) resentencing hearing.

### A. Section 1170, subdivision (d)(3)

As explained in part V., *ante*, we decline to make factual findings based on the judicially noticed records or the published opinion in *Palafox*, *supra*, 231 Cal.App.4th 68 that were never before the trial court when it made the factual findings as to whether appellant met his burden to prove by a preponderance of the evidence that he was eligible for resentencing pursuant to section 1170, subdivision (d)(2).

Instead, it is appropriate to remand the matter for appellant to file an amended petition with the appropriate supporting evidence, as permitted by section 1170, subdivision (d)(3), where the trial court may consider the evidence to make the factual

finding as to whether he has met his burden to prove one of the four eligibility circumstances by a preponderance of the evidence.

## B. Appellant's request for appointment of counsel

Appellant objects to remand to file an amended petition for the following reasons. He states that once the trial court recalls his sentence, it would be required to appoint counsel for purposes of the resentencing hearing. However, appellant states he "cannot assert that an inmate who wishes to present a section 1170(d) petition is entitled to counsel under the Sixth and Fourteenth Amendments, or under statute," because his eligibility for recall is not a critical stage.

Appellant argues that since he filed his petition in propria persona, "it would serve no reasonable purpose to require him as a *pro se* petitioner to jump through the hoop of gathering and properly submitting evidence regarding a probation report, court records, and a published opinion, when this court has recognized that the same is evidence sufficient to require a section 1170(d)(5) hearing."

Instead, appellant suggests this court should find that remand to file an amended petition under section 1170, subdivision (d)(3) is "a 'critical stage' of the criminal proceeding, at which [he] might unfairly sink rather that swim given his *pro se* status, in pursuit of an amended petition he deems unnecessary. And even should the court not deem counsel constitutionally compelled, the court could exercise the broad supervisory powers granted by section 1260 to direct the appointment of counsel."

## C. Critical stages

When appellant filed his section 1170, subdivision (d) petition in propria persona, he also requested the court to appoint counsel. Instead, the court summarily denied appellant's petition without appointing counsel. The court's failure to appoint counsel was not legally erroneous at that time. In contrast to other postjudgment statutory procedures to seek resentencing, section 1170, subdivision (d) does not require

appointment of counsel upon the filing of a facially sufficient petition. (See, e.g., *People v. Lewis* (2021) 11 Cal.5th 952, 957; § 1172.6, subd. (b)(3).)

As for a critical stage analysis, "[i]t is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.' [Citations.]" (*Marshall v. Rodgers* (2013) 569 U.S. 58, 62.) Sentencing is a critical stage in the criminal process within the meaning of the Sixth Amendment. (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) When a defendant is found statutorily eligible for postjudgment recall and resentencing, the resentencing proceeding constitutes a critical stage and, even if the right to counsel does not emanate from the Sixth Amendment, a defendant has a due process right to appointment of counsel at a resentencing hearing where the trial court may exercise its discretion and "restructur[e] the entire sentencing package." (*People v. Rouse* (2016) 245 Cal.App.4th 292, 300; see *id*. at pp. 299–300.)

We decline to expand the definition of a critical stage to include the filing of a petition and the court's eligibility determinations under section 1170, subdivision (d)(2). (*People v. Rouse, supra*, 245 Cal.App.4th at p. 301 ["Whether the right to counsel attaches at an earlier stage of the [section 1170.18] petition, including the eligibility phase, was not before us and we therefore express no opinion on that issue."].)

**D.  Section 1171**

Section 1171 expressly addresses the trial court's procedures in postconviction proceedings to modify a sentence or conviction pursuant to an ameliorative statute. It was signed into law in September 2024, and effective January 1, 2025, with minor amendments effective January 1, 2026. (*People v. Brinson* (2025) 112 Cal.App.5th 1040, 1047; Stats. 2024, ch. 964, § 2 (Assem. Bill No. 2483 (2023–2024 Reg. Sess.)), eff. Jan. 1, 2025, as amended by Stats. 2025, ch. 241, § 25 (Sen. Bill No. 857 (2025–2026 Reg. Sess.)), eff. Jan. 1, 2026.)

Section 1171, subdivision (a) defines a " 'postconviction proceeding' " to mean "a proceeding to modify a sentence or conviction pursuant to an ameliorative statute. Ameliorative statutes include, *but are not limited to*, Sections 1170.18, 1172.1, 1172.6, 1172.7, and 1172.75." (Italics added.) Section 1171, subdivision (b) directs the presiding judge of the superior court in each county to develop "a plan for fair and efficient handling of postconviction proceedings" after consultation with representatives from the district attorney, the public defender or indigent defense services, and other relevant entities, "in order to ensure timely and efficient postconviction proceedings."

Section 1171, subdivision (c) states several procedures that "shall apply for all postconviction proceedings unless there is a conflict with a more specific rule established in statute, in which case the more specific statute shall apply . . . ." (See, e.g., *People v. Brinson*, *supra*, 112 Cal.App.5th at p. 1049.)

Section 1171, subdivision (c)(1) states that "[u]pon receiving a request to begin a postconviction proceeding that is authorized in law, *the court shall consider whether to appoint counsel to represent the defendant*. This section does not prevent the court from assigning counsel at a later time." (§ 1170, subd. (c)(1), italics added.)

Section 1171 also states the trial court "shall consider any pertinent circumstances that have arisen since the prior sentence was imposed and has jurisdiction to modify every aspect of the defendant's sentence," including if it was imposed after a guilty plea (*id.*, subd. (c)(2)); that any changes to a sentence shall not be a basis for a prosecutor or court to rescind a plea agreement (*id.*, subd. (c)(3)); the court "shall state on the record the reasons for its decision to grant or deny the initial request to begin a postconviction proceeding and shall provide notice to the defendant of its decision" (*id.*, subd. (c)(4)), and after ruling on the request, the court shall advise the defendant of the right to appeal and the necessary steps and time for taking an appeal (*id.*, subd. (c)(5)).

52.

**E. Analysis**

Appellant's petition filed pursuant to section 1170, subdivision (d) is within the definitional provisions of section 1171, subdivision (a), since he filed a petition for recall and resentencing in a postconviction proceeding pursuant to ameliorative legislation.

Section 1170, subdivision (d)'s eligibility, recall, and resentencing provisions do not specifically address or prohibit appointment of counsel, or limit a trial court's ability to address the petition.  As a result, there is no conflict between section 1170, subdivision (d) and the discretionary appointment of counsel provision in section 1171, subdivision (c)(1).  (Cf. *People v. Brinson*, *supra*, 112 Cal.App.5th at p. 1048 [provisions of § 1171, subd. (c) do not apply when a defendant files a § 1172.1 petition since the trial court is not required to reply to a defendant-initiated petition filed under § 1172.1].)

We thus remand the matter for appellant to file an amended petition pursuant to section 1170, subdivision (d)(3), with the appropriate supporting evidence, in order for the trial court to review the evidence and make the factual finding whether appellant met his burden to prove by a preponderance of the evidence one of the four eligibility circumstances in section 1170, subdivision (d)(2)(A)–(D).  (§ 1170, subd. (d)(5).)

On remand, the trial court shall appoint counsel to represent appellant for purposes of filing the amended petition, pursuant section 1171, subdivision (c)(1).  This is appropriate given the unique circumstances of this case since appellant's petition requested appointment of counsel, *Palafox* and the judicially noticed records appear to show he did not have a prior record when he committed the murders, and these records were not available to appellant or before the trial court when it summarily denied his petition.

We express no view on how the trial court should exercise its discretion on remand.

## **DISPOSITION**

The trial court's denial of appellant's petition for recall and resentencing on March 29, 2024, is reversed.  The matter is remanded for appointment of counsel pursuant to section 1171, subdivision (c)(1) and for appellant to file an amended petition pursuant to section 1170, subdivision (d)(3) as to his eligibility for recall and resentencing with appropriate supporting evidence, and further appropriate proceedings as discussed in this opinion.


DETJEN, J.

WE CONCUR:


HILL, P. J.


FRANSON, J.

54.